## Case No. 12,968.

### Ex parte SMITH.

[6 Law Rep. 57; 3 McLean, 121.] [1]

Circuit Court. D. Illinois. Jan. 5, 1843.

INTERSTATE EXTRADITION — AUTHORITY OF STATE EXECUTIVE TO CAUSE ARREST—JURISDICTION OF FEDERAL COURTS — AFFIDAVIT FOR REQUISITION —DEFECTS.

1. The executive of a state has no authority to cause the arrest and surrender of a citizen, as a fugitive from justice, unless it appears that the alleged crime was committed in the state which makes the demand.

[Cited in Re Stupp, Case No. 13,562.]
[Cited in State v. Chapin, 17 Ark. 561.]

2. Governors of states, in issuing warrants for such arrest and surrender, act by the authority of the laws of the United States, although the state may have legislated upon the same subject.

[Cited in Re McDonald, Case No. 8,751; Re Robb, 19 Fed. 31.]
[Cited in Re Mohr, 73 Ala. 503.]

---

[1] [The syllabus is from 6 Law Rep. 57; the statement and opinion, from 3 McLean, 121.]

3. The courts of the United States have jurisdiction in the premises, and may order a person so arrested to be discharged; but whether the state courts have jurisdiction, or whether it is competent for either courts on habeas corpus to inquire into facts behind the writ, quære.

[Cited in Re Kaine, Case No. 7,598; Re Bull, Id. 2,119; U. S. v. McClay, Id. 15,660; Re Leary, Id. 8,162; Ex parte Brown, 28 Fed. 654; Re Cook, 49 Fed. 839.]

[Cited in Jones v. Leonard, 50 Iowa, 110; Work v. Corrington, 34 Ohio St. 64; People v. Brady, 56 N. Y. 187.]

4. The governor of Missouri made a requisition on the governor of Illinois for the surrender and delivery of S., an alleged fugitive from justice, charged with being accessory before the fact to an assault with intent to kill B., in Missouri. The affidavit of B., upon which the said requisition was founded, set forth, that he was shot with intent to kill, and that he believed and had good reason to believe, from evidence and information in his possession, that S. was accessory before the fact of the intended murder, and that the said S. was a citizen and resident of Illinois. The governor of Illinois thereupon issued his warrant for the arrest and delivery of S., upon whose petition a writ of habeas corpus was afterwards issued by this court. *Held,* that the courts of the United States had jurisdiction in the premises.

[Cited in Re Sheazle, Case No. 12,734; U. S. v. McClay, Id. 15,660; Re Doo Woon, 18 Fed. 899; Ex parte Hart, 63 Fed. 260.]

5. S. was entitled to his discharge, for defects in the affidavit upon which the requisition and warrant were founded, inasmuch as it did not appear distinctly that he had committed any crime in Missouri, or that he had fled from that state.

[Cited in Re Jackson, Case No. 7,125; Ex parte Lane, 6 Fed. 39; Ex parte Morgan, 20 Fed. 308.]

[Cited in Com. v. Hall, 9 Gray, 265. Distinguished in Re Davis, 122 Mass. 329. Cited in Re Eldred, 46 Wis. 552, 1 N. W. 175; Hartman v. Aveline, 63 Ind. 352; Johns v. State, 19 Ind. 427; Smith v. State, 21 Neb. 558, 32 N. W. 594; Ex parte Spears, 88 Cal. 642, 26 Pac. 608; State v. Chapin, 17 Ark. 561; Ex parte Stanley (Tex. App.) 8 S. W. 646; State v. Hall (N. C.) 20 S. E. 730. Cited in brief in State v. Swope, 72 Mo. 401.]

This case came before the court upon a return to a writ of habeas corpus, which was issued by this court on the 31st of December, 1842, upon a petition for a habeas corpus on the relation of Joseph Smith, setting forth that he was arrested and in custody of William F. Elkin, sheriff of Sangamon county, upon a warrant issued by the governor of the state of Illinois, upon a requisition of the governor of the state of Missouri, demanding him to be delivered up to the governor of Missouri, as a fugitive from justice; that his arrest, as aforesaid, was under color of a law of the United States, and was without the authority of law in this, that he was not a fugitive from justice, nor had he fled from the state of Missouri.

Afterwards, on the same day, the sheriff of Sangamon county returned upon the said habeas corpus, that he detained the said Joseph Smith in custody, by virtue of a warrant issued by the governor of the state of Illinois, upon the requisition of the governor of the state of Missouri, made on the af-

fidavit of Lilburn W. Boggs. Copies of the said affidavit, requisition and warrant were annexed to the said return in the words and figures following:

"State of Missouri, County of Jackson, ss. This day personally appeared before me, Samuel Weston, a justice of the peace within and for the county of Jackson, the subscriber, Lilburn W. Boggs, who, being duly sworn, doth depose and say, that on the night of the 6th day of May, 1842, while sitting in his dwelling in the town of Independence, in the county of Jackson, he was shot with intent to kill, and that his life was despaired of for several days; and that he believes, and has good reason to believe, from evidence and information now in his possession, that Joseph Smith, commonly called the Mormon Prophet, was accessory before the fact of the intended murder; and that the said Joseph Smith is a citizen or resident of the state of Illinois; and the said deponent hereby applies to the governor of the state of Missouri to make a demand on the governor of the state of Illinois, to deliver the said Joseph Smith, commonly called the Mormon Prophet, to some person authorised to receive and convey him to the state and county aforesaid, there to be dealt with according to law. Lilburn W. Boggs.

"Sworn to and subscribed before me, this 20th day of July, 1842. Samuel Weston, J. P."

"The Governor of the State of Missouri, to the Governor of the State of Illinois— Greeting: Whereas, it appears by the annexed document, which is hereby certified to be authentic, that one Joseph Smith is a fugitive from justice, charged with being accessory before the fact to an assault with intent to kill, made by one O. P. Rockwell, on Lilburn W. Boggs, in this state, and it is represented to the executive department of this state, has fled to the state of Illinois: Now, therefore, I, Thomas Reynolds, governor of the said state of Missouri, by virtue of the authority in me vested by the constitution and laws of the United States, do by these presents demand the surrender and delivery of the said Joseph Smith to Edward R. Ford, who is hereby appointed as the agent to receive the said Joseph Smith, on the part of this state. In testimony," &c.

"The People of the State of Illinois, to the Sheriff of Sangamon County—Greeting. Whereas, it has been made known to me by the executive authority of the state of Missouri, that one Joseph Smith stands charged by the affidavit of one Lilburn W. Boggs, made on the 20th day of July, 1842, at the county of Jackson, in the state of Missouri, before Samuel Weston, a justice of the peace, within and for the county of Jackson aforesaid, with being accessory before the fact to an assault with an intent to kill, made by one O. P. Rockwell, on Lilburn W. Boggs, on the night of the 6th day of

May, 1842, at the county of Jackson, in said state of Missouri, and that the said Joseph Smith has fled from the justice of said state, and taken refuge in the state of Illinois: Now, therefore, I, Thomas Ford, governor of the state of Illinois, pursuant to the constitution and laws of the United States, and of this state, do hereby command you to arrest and apprehend the said Joseph Smith, if he be found within the limits of the state aforesaid, and cause him to be safely kept and delivered to the custody of Edward R. Ford, who has been duly constituted the agent of the said state of Missouri, to receive said fugitive from the justice of said state, he paying all fees and charges for the arrest and apprehension of said Joseph Smith, and make due return to the executive department of this state, the manner in which this writ may be executed. In testimony whereof," &c.

The case was set for hearing on the 4th day of January, 1843, on which day Josiah Lamborn, attorney general of the state of Illinois, appeared, and moved to dismiss the proceedings, and filed the following objection to the jurisdiction of the court, viz: "1st. The arrest and detention of Smith was not under or by color of authority of the United States, or of any officers of the United States, but under and by color of authority of the state of Illinois, by the officers of Illinois. 2d. When a fugitive from justice is arrested by authority of the governor of any state, upon the requisition of the governor of another state, the courts of justice neither state nor federal, have any authority or jurisdiction to inquire into any facts behind the writ."

The counsel of the said Joseph Smith then offered to read in evidence affidavits of several persons, showing conclusively that the said Joseph Smith was at Nauvoo, in the county of Hancock and state of Illinois, on the whole of the 6th and 7th days of May, in the year 1842, and on the evenings of those days, more than three hundred miles distant from Jackson county, in the state of Missouri, where it is alleged that the said Boggs was shot, and that he had not been in the state of Missouri at any time between the 10th day of February and the 1st day of July, 1842, the said persons having been with him during the whole of that period. That on the 6th day of May aforesaid, he attended an officers' drill at Nauvoo aforesaid, in the presence of a large number of people, and on the 7th day of May aforesaid he reviewed the Nauvoo Legion in presence of many thousand people. The reading of these affidavits was objected to by the attorney general of the state of Illinois, on the ground that it was not competent for Smith to impeach or contradict the return to the habeas corpus. It was contended by the counsel of the said Smith, 1st. That he had a right to prove that the return was untrue. 2d. That the said affidavits did not contradict the said return, as

there was no averment under oath in said return that the said Smith was in Missouri at the time of the commission of the alleged crime, or had fled from the justice of that state. The court decided that the said affidavit should be read in evidence, subject to all objections; and they were read accordingly.

The cause was argued by J. Butterfield and B. S. Edwards, for Smith, and by Josiah Lamborn, attorney general of the state of Illinois, contra.

J. Butterfield, counsel for Smith, made the following points:

(1) This court has jurisdiction. The requisition purports on its face to be made, and the warrant to be issued, under the constitution and laws of the United States, regulating the surrender of fugitives from justice. Const. U. S. art. 4, § 2; Act Cong. Feb. 12, 1793, § 1 [1 Stat. 302]. When a person's rights are invaded under a law of the United States, he has no remedy except in the courts of the United States. Const. U. S. art. 3, § 2; 12 Wend. 325; [Prigg v. Commonwealth of Pennsylvania] 16 Pet. [41 U. S.] 543. The whole power in relation to the delivering up of fugitives from justice and labor, has been delegated to the United States, and congress has regulated the manner and form in which it shall be exercised. The power is exclusive. The state legislatures have no right to interfere, and if they do, their acts are void. Const. U. S. art. 4, § 2, cls. 2, 3; 2 Laws U. S. 331; [Prigg v. Commonwealth of Pennsylvania] 16 Pet. [41 U. S.] 617, 618, 623; [Sturges v. Crowninshield] 4 Wheat. [17 U. S.] 122, 193; 12 Wend. 312. All courts of the United States are authorised to issue writs of habeas corpus when the prisoner is confined under or by color of authority of the United States. Act Cong. Sept. 24, 1789, § 14 [1 Stat. 81]; 2 Cond. R. 33; [Ex parte Burford] 3 Cranch [7 U. S.] 448; [Ex parte Watkins] 3 Pet. [28 U. S.] 193.

(2) The return to the habeas corpus is not certain and sufficient to warrant the arrest and transportation of Smith. In all cases on habeas corpus previous to indictment, the court will look into the depositions before the magistrate, and though the commitment be full and in form, yet if the testimony prove no crime, the court will discharge. Ex parte Tayloe, 5 Cow. 50. The affidavit of Boggs does not show that Smith was charged with any crime committed by him in Missouri, nor that he was a fugitive from justice. If the commitment be for a matter for which by law the prisoner is not liable to be punished, the court must discharge him. 3 Bac. Abr. 434. The executive of this state has no jurisdiction over the person of Smith to transport him to Missouri, unless he has fled from that state.

(3) The prisoner has a right to prove facts not repugnant to the return, and even to go behind the return and contradict it, unless

committed under a judgment of a court of competent jurisdiction. 3 Bac. Abr. 435, 438; [Ex parte Watkins] 3 Pet. [28 U. S.] 202; Gale's Rev. Laws Ill. 323. The testimony introduced by Smith at the hearing, showing conclusively that he was not a fugitive from justice, is not repugnant to the return.

J. Lamborn, attorney general of the state of Illinois, in support of the points made by him, cited 2 Cond. R. 37; Gord. Dig. 73; Gale's St. Ill. 318; Conk. Prac. 85; 9 Wend. 212.

And afterwards, on the 5th day of January, 1843, POPE, District Judge, delivered the following:

The importance of this case, and the consequences which may flow from an erroneous precedent, affecting the lives and liberties of our citizens, have impelled the court to bestow upon it the most anxious consideration. The able arguments of the counsel for the respective parties, have been of great assistance in the examination of the important question arising in this cause. When the patriots and wise men who framed our constitution were in anxious deliberation to form a perfect union among the states of the confederacy, two great sources of discord presented themselves to their consideration; the commerce between the states, and fugitives from justice and labor. The border collisions in other countries had been seen to be a fruitful source of war and bloodshed, and most wisely did the constitution confer upon the national government, the regulation of those matters, because of its exemption from the excited passions awakened by conflicts between neighboring states, and its ability alone to adopt a uniform rule, and establish uniform laws among all the states in those cases. This case presents the important question arising under the constitution and laws of the United States, whether a citizen of the state of Illinois can be transported from his own state to the state of Missouri, to be there tried for a crime, which, if he ever committed, was committed in the state of Illinois; whether he can be transported to Missouri, as a fugitive from justice, when he has never fled from that state.

Joseph Smith is before the court, on habeas corpus, directed to the sheriff of Sangamon county, state of Illinois. The return shows that he is in custody under a warrant from the executive of Illinois, professedly issued in pursuance of the constitution and laws of the United States, and of the state of Illinois, ordering said Smith to be delivered to the agent of the executive of Missouri, who had demanded him as a fugitive from justice, under the 2d section, 4th article of the constitution of the United States, and the act of congress passed to carry into effect that article. The article is in these words, viz.: "A person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall on demand of the executive authority of the state, from which he fled, be delivered up to be removed to the state having jurisdiction of the crime." The act of congress made to carry into effect this article, directs that the demand be made on the executive of the state where the offender is found, and prescribes the proof to support the demand, viz.: indictment or affidavit.

The court deemed it respectful to inform the governor and attorney general of the state of Illinois, of the action upon the habeas corpus. On the day appointed for the hearing, the attorney general of the state of Illinois appeared, and denied the jurisdiction of the court to grant the habeas corpus: 1st. Because the warrant was not issued under color or by authority of the United States, but by the state of Illinois. 2d. Because no habeas corpus can issue in this case from either the federal or state courts, to inquire into facts behind the writ. In support of the first point, a law of Illinois was read, declaring that whenever the executive of any other state shall demand of the executive of this state, any person as a fugitive from justice, and shall have complied with the requirements of the act of congress, in that case made and provided, it shall be the duty of the executive of this state to issue his warrant to apprehend the said fugitive, &c. It would seem that this act does not purport to confer any additional power upon the executive of this state, independent of the power conferred by the constitution and laws of the United States, but to make it the duty of the executive to obey and carry into effect the act of congress. The warrant on its face purports to be issued in pursuance of the constitution and laws of the United States, as well as of the state of Illinois. To maintain the position that this warrant was not issued under color or by authority of the laws of the United States, it must be proved that the United States could not confer the power on the executive of Illinois. Because if congress could and did confer it, no act of Illinois could take it away, for the reason that the constitution, and laws of the United States, passed in pursuance of it, and treaties, are the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding. This is enough to dispose of that point. If the legislature of Illinois, as is probable, intended to make it the duty of the governor to exercise the power granted by congress, and no more, the executive would be acting by authority of the United States. It may be that the legislature of Illinois, appreciating the importance of the proper execution of those laws, and doubting whether the governor could be punished for refusing to carry them into effect, deemed it prudent to impose it as a duty, the neglect of which would expose him

to impeachment. If it intended more, the law is unconstitutional and void. Prigg v. Pennsylvania, 16 Pet. [41 U. S.] 617.

In supporting the second point, the attorney general seemed to urge that there was greater sanctity in a warrant issued by the governor, than by an inferior officer. The court cannot assent to this distinction. This is a government of laws, which prescribes a rule of action, as obligatory upon the governor as upon the most obscure officer. The character and purposes of the habeas corpus are greatly misunderstood by those who suppose that it does not review the acts of an executive functionary. All who are familiar with English history, must know that it was extorted from an arbitrary monarch, and that it was hailed as a second magna charta, and that it was to protect the subject from arbitrary imprisonment by the king and his minions, which brought into existence that great palladium of liberty in the latter part of the reign of Charles II. It was indeed a magnificent achievement over arbitrary power. Magna Charta established the principles of liberty; the habeas corpus protected them. It matters not how great or obscure the prisoner, how great or obscure the prison-keeper, this munificent writ, wielded by an independent judge, reaches all. It penetrates alike the royal towers and the local prisons, from the garret to the secret recesses of the dungeon. All doors fly open at its command, and the shackles fall from the limbs of prisoners of state as readily as from those committed by subordinate officers. The warrant of the king and his secretary of state could claim no more exemption from that searching inquiry, "The cause of his caption and detention," than a warrant granted by a justice of the peace. It is contended that the United States is a government of granted powers, and that no department of it can exercise powers not granted. This is true. But the grant is to be found in the 2d section of the 3d article of the constitution of the United States: "The judicial power shall extend to all cases in law, or equity, arising under this constitution, the laws of the United States, and treaties made and which shall be made under their authority."

The matter under consideration presents a case arising under the 2d section, 4th article of the constitution of the United States, and the act of congress of February 12th, 1793 [1 Stat. 302], to carry it into effect. The judiciary act of 1789 confers on this court (indeed on all the courts of the United States,) power to issue the writ of habeas corpus, when a person is confined "under color of or by the authority of the United States." Smith is in custody under color of, and by authority of the 2d section, 4th article of the constitution of the United States. As to the instrument employed or authorised to carry into effect that article of the constitution (as he derives from it the authority to issue the warrant,) he must be regarded as acting by the authority of the United States. The power is not official in the governor, but personal. It might have been granted to any one else by name, but considerations of convenience and policy recommended the selection of the executive, who never dies. The citizens of the states are citizens of the United States; hence the United States are as much bound to afford them protection in their sphere, as the states are in theirs. This court has jurisdiction. Whether the state courts have jurisdiction or not, this court is not called upon to decide.

The return of the sheriff shows that he has arrested and now holds in custody Joseph Smith, in virtue of a warrant issued by the governor of Illinois, under the 2d section of the 4th article of the constitution of the United States, relative to fugitives from justice, and the act of congress passed to carry it into effect. The article of the constitution does not designate the person upon whom the demand for the fugitive shall be made; nor does it prescribe the proof upon which he shall act. But congress has done so. The proof is "an indictment or affidavit," to be certified by the governor demanding. The return brings before the court the warrant, the demand and the affidavit. The material part of the latter is in these words, viz.:—"Lilburn W. Boggs, who being duly sworn, doth depose and say, that on the night of the 6th day of May, 1842, while sitting in his dwelling in the town of Independence, in the county of Jackson, he was shot with intent to kill; and that his life was despaired of for several days, and that he believes, and has good reason to believe, from evidence and information now in his possession, that Joseph Smith, commonly called the 'Mormon Prophet,' was accessary before the fact of the intended murder, and that the said Joseph Smith is a citizen or a resident of the state of Illinois." This affidavit is certified by the governor of Missouri to be authentic. The affidavit being thus verified, furnished the only evidence upon which the governor of Illinois could act. Smith presented affidavits proving that he was not in Missouri at the date of the shooting of Boggs. This testimony was objected to by the attorney general of Illinois, on the ground that the court could not look behind the return. The court deems it unnecessary to decide that point, inasmuch as it thinks Smith entitled to his discharge for defect in the affidavit. To authorise the arrest in this case, the affidavit should have stated distinctly: 1st. That Smith had committed a crime. 2d. That he committed it in Missouri. It must appear that he fled from Missouri, to authorise the governor of Missouri to demand him, as none other than the governor of the state from which he fled, can make the demand. He could not have fled from justice, unless he committed a crime, which does not appear. It must appear that the crime was committed in Missouri, to warrant the governor of Il-

linois in ordering him to be sent to Missouri for trial. The 2d section, 4th article, declares, he "shall be removed to the state having jurisdiction of the crime." As it is not charged that the crime was committed by Smith in Missouri, the governor of Illinois could not cause him to be removed to that state, unless it can be maintained that the state of Missouri can entertain jurisdiction of crimes committed in other states. The affirmative of this proposition was taken in the argument with a zeal indicating sincerity. But no adjudged case or dictum was adduced in support of it. The court conceives that none can be. Let it be tested by principle.

Man in a state of nature is a sovereign, with all the prerogatives of king, lords and commons. He may declare war and make peace, and, as nations often do who "feel power and forget right," may oppress, rob and subjugate his weaker and unoffending neighbors. He unites in his person the legislative, judicial and executive power—"can do no wrong," because there is none to hold him to account. But when he unites himself with a community, he lays down all the prerogatives of sovereign, (except self-defence,) and becomes a subject. He owes obedience to its laws and the judgments of its tribunals, which he is supposed to have participated in establishing, either directly or indirectly. He surrenders, also, the right of self-redress. In consideration of all which, he is entitled to the ægis of that community to defend him from wrongs. He takes upon himself no allegiance to any other community, so owes it no obedience, and therefore cannot disobey it. None other than his own sovereign can prescribe a rule of action to him. Each sovereign regulates the conduct of its subjects, and they may be punished upon the assumption that they know the rule and have consented to be governed by it. It would be a gross violation of the social compact, if the state were to deliver up one of its citizens to be tried and punished by a foreign state, to which he owes no allegiance, and whose laws were never binding on him. No state can or will do it. In the absence of the constitutional provision, the state of Missouri would stand on this subject in the same relation to the state of Illinois, that Spain does to England. In this particular, the states are independent of each other. A criminal, fugitive from the one state to the other, could not be claimed as of right to be given up. It is most true, as mentioned by writers on the laws of nations, that every state is responsible to its neighbors for the conduct of its citizens, so far as their conduct violates the principles of good neighborhood. So it is among private individuals.—But for this, the inviolability of territory, or private dwelling, could not be maintained. This obligation creates the right, and makes it the duty of the state to impose such restraints upon the citizen, as the occasion demands. It was in the performance of this duty, that the United States passed laws to restrain citizens of the United States from setting on foot and fitting out military expeditions against their neighbors. While the violators of this law kept themselves within the United States, their conduct was cognizable in the courts of the United States, and not of the offended state, even if the means provided had assisted in the invasion of the foreign state. A demand by the injured state upon the United States for the offenders, whose operations were in their own country, would be answered, that the United States' laws alone could act upon them, and that, as a good neighbor, it would punish them.

It is the duty of the state of Illinois to make it criminal in one of its citizens to aid, abet, counsel, or advise, any person to commit a crime in her sister state. Any one violating the law would be amenable to the laws of Illinois, executed by its own tribunals. Those of Missouri could have no agency in his conviction and punishment. But if he shall go into Missouri, he owes obedience to her laws, and is liable before her courts, to be tried and punished for any crime he may commit there; and a plea that he was a citizen of another state, would not avail him. If he escape, he may be surrendered to Missouri for trial. But when the offence is perpetrated in Illinois, the only right of Missouri is, to insist that Illinois compel her citizens to forbear to annoy her. This she has a right to expect. For the neglect of it, nations go to war and violate territory. The court must hold that where a necessary fact is not stated in the affidavit, it does not exist. It is not averred that Smith was accessary before the fact, in the state of Missouri, nor that he committed a crime in Missouri: therefore, he did not commit the crime in Missouri—did not flee from Missouri to avoid punishment.

Again, the affidavit charges the snooting on the 6th of May, in the county af Jackson, and state of Missouri, "that he believes and has good reason to believe, from evidence and information now (then) in his possession, that Joseph Smith was accessary before the fact, and is a resident or citizen of Illinois." There are several objections to this. Mr. Boggs having the "evidence and information in his possession," should have incorporated it in the affidavit, to enable the court to judge of their sufficiency to support his "belief." Again, he swears to a legal conclusion, when he says that Smith was accessary before the fact. What acts constitute a man an accessary is a question of law, and not always of easy solution. Mr. Boggs' opinion, then, is not authority. He should have given the facts. He should have shown that they were committed in Missouri, to enable the court to test them by the laws of Missouri, to see if they amounted to a crime. Again, the affidavit is fatally defective in this, that Boggs swears to his belief. The language in the constitution is, "charged with felony, or other crime." Is the constitution satisfied with a charge upon suspicion? It is

to be regretted that no American adjudged case has been cited to guide the court in expounding this article. Language is ever interpreted by the subject matter. If the object were to arrest a man near home, and there were fears of escape if the movement to detain him for examination were known, the word "charged" might warrant the issuing of a capias on suspicion. Rudyard (reported in 2 Vent. 22, Skin. 676), was committed to Newgate for refusing to give bail for his good behavior, and was brought before the common pleas on habeas corpus. The return was, that he had been complained of for exciting the subjects to disobedience of the laws against seditious conventicles, and upon examination they found cause to suspect him. Vaughan, C. J.: "Tyrrel v. Wild [unreported] held the return insufficient—1st. because it did not appear but that he might abet frequenters of conventicles in the way the law allows; 2d. to say that he was complained of, or was examined, is no proof of his guilt; and then to say that he had cause to suspect him, is too cautious; for who can tell what they count a cause of suspicion, and how can that ever be tried? At this rate they would have arbitrary power, upon their own allegation, to commit whom they pleased."

From this case, it appears that suspicion does not warrant a commitment, and that all legal intendments are to avail the prisoner. That the return is to be most strictly construed in favor of liberty. If suspicion in the foregoing case did not warrant a commitment in London by its officers, of a citizen of London, might not the objection be urged with greater force against a commitment of a citizen of our state, to be transported to another, on suspicion? No case can arise demanding a more searching scrutiny into the evidence, than in cases arising under this part of the constitution of the United States. It is proposed to deprive a freeman of his liberty—to deliver him into the custody of strangers, to be transported to a foreign state, to be arraigned for trial before a foreign tribunal, governed by laws unknown to him—separated from his friends, his family and his witnesses, unknown and unknowing. Had he an immaculate character, it would not avail him with strangers. Such a spectacle is appalling enough to challenge the strictest analysis. The framers of the constitution were not insensible of the importance of courts possessing the confidence of the parties. They therefore provided that citizens of the different states might resort to the federal courts in civil causes. How much more important that the criminal have confidence in his judge and jury? Therefore, before the capias is issued, the officers should see that the case is made out to warrant it. Again, Boggs was shot on the 6th of May. The affidavit was made on the 20th of July following. Here was time for inquiry, which would confirm into certainty or dissipate his suspicions. He had time to collect facts to be laid before a grand jury, or be incorporated in his affidavit. The court is bound to assume that this would have been the course of Mr. Boggs, but that his suspicions were light and unsatisfactory.

The affidavit is insufficient—1st. because it is not positive; 2d. because it charges no crime; 3d. it charges no crime committed in the state of Missouri. Therefore, he did not flee from the justice of the state of Missouri, nor has he taken refuge in the state of Illinois.

The proceedings in this affair, from the affidavit to the arrest, afford a lesson to governors and judges, whose action may hereafter be invoked in cases of this character. The affidavit simply says that the affiant was shot with intent to kill, and he believes that Smith was accessary before the fact to the intended murder, and is a citizen or resident of the state of Illinois. It is not said who shot him, or that the person was unknown. The governor of Missouri, in his demand, calls Smith a fugitive from justice, charged with being accessary before the fact to an assault with intent to kill, made by one O. P. Rockwell, on Lilburn W. Boggs, in this state (Missouri). This governor expressly refers to the affidavit as his authority for that statement. Boggs, in his affidavit, does not call Smith a fugitive from justice, nor does he state a fact from which the governor had a right to infer it. Neither does the name of O. P. Rockwell appear in the affidavit, nor does Boggs say Smith fled. Yet the governor says he fled to the state of Illinois. But Boggs only says he is a citizen or resident of the state of Illinois. The governor of Illinois, responding to the demand of the executive of Missouri for the arrest of Smith, issues his warrant for the arrest of Smith, reciting that—"whereas, Joseph Smith stands charged, by the affidavit of Lilburn W. Boggs, with being accessary before the fact to an assault with intent to kill, made by one O. P. Rockwell, on Lilburn W. Boggs, on the night of the 6th day of May, 1842, at the county of Jackson, in the said state of Missouri, and that the said Joseph Smith has fled from the justice of said state, and taken refuge in the state of Illinois." Those facts do not appear by the affidavit of Boggs. On the contrary, it does not assert that Smith was accessary to O. P. Rockwell, nor that he had fled from the justice of the state of Missouri, and taken refuge in the state of Illinois.

The court can alone regard the facts set forth in the affidavit of Boggs, as having any legal existence. The mis-recitals and over-statements in the requisition and warrant, are not supported by oath, and cannot be received as evidence to deprive a citizen of his liberty, and transport him to a foreign state for trial. For these reasons, Smith must be discharged.

At the request of J. Butterfield, counsel for Smith, it is proper to state, in justice to the

present executive of the state of Illinois, Governor Ford, that it was admitted on the argument, that the warrant which originally issued upon the said requisition, was issued by his predecessor; that when Smith came to Springfield to surrender himself up upon that warrant, it was in the hands of the person to whom it had been issued at Quincy in this state; and that the present warrant, which is a copy of the former one, was issued at the request of Smith, to enable him to test its legality by writ of habeas corpus.

Let an order be entered that Smith be discharged from his arrest.