CASE No. 812.

## *EX PARTE* SWEARINGEN.

1. Whenever the governor of a state demands of the governor of another state the body of a person as a fugitive from justice, producing at the same time a copy of indictment found or affidavit made, certified to be authentic by the demanding governor, and showing that the person demanded is charged with the commission of some crime in the state from which he has fled, it is the duty of the governor upon whom the demand is made to cause the arrest and delivery of the person demanded. WILLARD, C. J., *dissenting*.

2. It cannot be objected to such arrest and delivery that the prosecution was instituted and the affidavit made by a citizen of this state, in the state where the crime was alleged to have been committed.

3. The absence of an affidavit charging the prisoner to be a fugitive from justice, is not fatal to the requisition. WILLARD, C. J., *dissenting*.

4. The term "flee from justice" in Arcticle IV., Section 2, of the constitution of the United States includes cases where a citizen of one state commits a crime in another state and then returns to his home.

5. Where a prisoner is in the hands of the sheriff under a mandate issued by the governor of this state in pursuance of a requisition from the governor of Georgia, and such mandate requires the delivery of the prisoner to an agent of the governor of Georgia, the prisoner will not be discharged because that the mandate contains no order for his *arrest*.

Original application to this court by John C. Swearingen for discharge from custody under writ of *habeas corpus*. The case is fully stated in the opinion of the court.

*Mr. M. W. Gary*, for petitioner.

The petitioner is not a fugitive from justice. *Burr. L. Dict.;* 2 *Carter* 396; 1 *Archb. Cr. Pr. & Pl.* 140. There must be an

actual fleeing from justice, and of this the governor of the state of whom the demand is made, as well as of the state making it, should be satisfied. This is commonly shown by affidavit. 6 *Penna. L. J.* 412; 6 *Am. Jur.* 226 ; *Lewis Cr. L.* 266 ; *Hurd on Hab. Corp.* 606 ; 12 *Am. L. R.* 603. Has the governor of South Carolina followed the practice in such cases, or complied with act of 1793? Under the act of congress, on its provisions being complied with, the governor is required to order him to be arrested. 1 *Hill* 327. The representations of the executive of the demanding state are of no effect unless supported by a duly authenticated copy of the indictment found or affidavit made. The warrant is void without these, and should show on its face that they had been produced to the executive. 9 *Tex.* 635 ; 1 *Archb. Cr. Pr. & Pl.* 140, 141 ; 9 *Wend.* 212 ; 1 *Sand.* 701 ; 1 *Hill* 346. The paper issued by Governor Simpson was clearly not a warrant. What is a warrant and what an arrest ? *Burr. L. Dict.* The governor being an executive officer cannot issue a warrant. 24 *How.* 104 ; 31 *Vt.* 299 ; *Const. U. S., Art. XIV.,* § 1 ; *Const. S. C., Art. I.,* § 26.

*Mr. Solicitor Abney* and *Mr. S. Dutcher,* solicitor-general of Georgia, contra.

February 14th, 1880.    The opinion of the court was delivered by

McIVER, A. J.    In compliance with petition of the prisoner alleging that he is unlawfully detained in the custody of John C. Gaston, sheriff of Edgefield county, he was brought before this court under a writ of *habeas corpus,* and now claims his discharge upon various grounds, which will be hereinafter more particularly noticed. The return of the sheriff to the writ states that the petitioner is detained by virtue of a mandate from the governor of this state issued in pursuance of a requisition from the governor of Georgia demanding the petitioner as a fugitive from justice, requiring him to deliver the petitioner to one John R. Ivey, the agent of the State of Georgia, and craves reference to these papers—the requisition from the governor of Georgia and the mandate of the governor of this state—as part

of the return. The requisition shows that the petitioner stands charged with the crime of riot, committed in the State of Georgia, and that he is demanded as a fugitive from justice. A copy of an affidavit made before a magistrate in the State of Georgia, duly authenticated by the governor of that state, accompanies the requisition, in which the petitioner is charged with having committed the crime of riot in Georgia.

The constitution of the United States, Article IV., Section 2, provides that, "A person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." For several years after the adoption of the constitution of the United States there was no legislation providing the mode by which this clause of the constitution should be carried into effect, and as a natural consequence controversies arose between the states in regard to this matter, one of which, between Pennsylvania and Virginia, doubtless gave rise to the passage of the act of 1793, (*Rev. Stat. U. S.*, § 5278,) prescribing the mode of carrying this clause of the constitution into effect; for when the governor of Virginia declined to comply with the requisition from the governor of Pennsylvania, the latter sent all the papers to President Washington, calling especial attention to the objections of the authorities of the State of Virginia based on the necessity of future legislation upon the subject, and suggesting that the matter be brought to the attention of congress. The president referred the papers to his attorney-general, Mr. Randolph, who gave an elaborate opinion as to the proper construction of the clause of the constitution in question, from which the necessity for further legislation was apparent. The president accordingly brought the attention of congress to the matter by a message in November, 1792, and in the following February the act of 1793, above cited, was passed. That act, so far as it is necessary for the purpose of this case to state, in substance provides that whenever the executive authority of a state shall demand any person as a fugitive from justice of the executive authority of any state to which such person shall have fled, and shall produce a copy of

an indictment found, or an affidavit made before a magistrate of any state charging the person so demanded with having committed treason, felony, or other crime in the state from which the demand proceeds, certified as authentic by the governor of the state from whence the person so charged has fled, it shall be the duty of the governor of the state to which such person has fled to cause such person to be arrested and secured and delivered to the agent of the state from which such demand proceeds. It will be observed that three things are necessary to be done by the governor of the state making the demand. 1st. He must demand the person as a fugitive from justice. 2d. He must produce a copy of an indictment found, or an affidavit made before a magistrate of a state, showing that the person demanded is charged with having committed some crime in the state from which he has fled. 3d. Such copy of the indictment, or affidavit, must be certified as authentic by the governor of the state making the demand. The only inquiry, therefore, in this case, is, whether these requirements of the act of congress have been complied with; for, if so, the governor of this state was not only authorized, but was required to issue his mandate requiring the arrest of the petitioner and his delivery to the agent of the State of Georgia. As Taney, C. J., says in *Kentucky* v. *Dennison*, 24 *How.* 104: "It will be observed that the judicial acts which are necessary to authorize the demand are plainly specified in the act of congress, and the certificate of the excutive authority is made conclusive as to their verity when presented to the executive of the state where the fugitive is found. He has no right to look behind them, or to look into the character of the crime specified in this judicial proceeding."

An examination of the papers referred to in the return satisfies us that all of the requirements of the act of congress have been fully complied with, and that the petitioner is not unlawfully detained in the custody of the said John T. Gaston. The requisition shows, upon its face, that the petitioner is demanded as a fugitive from justice, and the copy of the affidavit accompanying it, duly authenticated by the governor of Georgia, shows that the petitioner stands charged with the crime of riot, committed in the State of Georgia.

It only remains to consider the grounds upon which the motion for the discharge of the petitioner has been urged. The first ground taken was that the person who originated the prosecution in the State of Georgia was not a citizen of that state, and having no interest in the enforcement of the laws, and not contributing anything in the way of taxes to the expenses of courts of justice in Georgia, could not lawfully commence a prosecution there. It is quite sufficient to say that we are not at liberty to consider such a question. The authorities of the State of Georgia have undoubtedly recognized the fact that a prosecution has been lawfully commenced in that state, and it is not for us to question it. Whether the charge has been made in proper legal form, or whether it can be sustained by legal evidence, are questions which belong exclusively to the tribunals of the state where the crime is alleged to have been committed, as they alone have jurisdiction to determine whether the laws of such state have been violated. Even, however, were the point raised a matter within our jurisdiction, we are altogether unable to discover any valid reason why a citizen of South Carolina may not commence a prosecution in the State of Georgia for an offence committed within the territorial limits of that state.

The next ground taken was, that the absence of an affidavit that the petitioner was a fugitive from justice is fatal to the requisition. A sufficient answer to this is, that the act of congress which was passed for the express purposes of prescribing the steps to be taken in order to carry into effect this provision of the constitution does not require any such affidavit. And in this connection it is not unimportant to remember that this was one of the grounds upon which Mr. Attorney-General Randolph, in his opinion above referred to, regarded the requisition of the governor of Pennsylvania upon the governor of Virginia as defective, and yet, though this opinion, coming from the highest law officer of the government, was before the congress which in large measure was composed of those who participated in framing the constitution, when they passed the act of 1793, and doubtless prompted the passage of such act, yet they deliberately omitted from such act any provision requiring an affidavit that the person demanded is a fugitive from justice, for the reason, perhaps,

that in most, if not in all, cases that fact would sufficiently appear from the papers required by the act of 1793, and from the necessary course of proceedings in executing the provisions of the act. It is very true that the constitution does seem to contemplate, as one of the conditions of the right to demand, that the person demanded shall not only be charged with a crime committed in another state, but that he shall also be a fugitive from the justice of such state. But while the act of congress expressly prescribes the mode by which the fact that the person demanded is charged with crime shall be authenticated, it does not prescribe any mode by which the fact that he is a fugitive from justice shall be authenticated.

If, therefore, it is necessary that such fact shall be made to appear, it certainly is not essential that it shall be proven by an affidavit certified by the governor of the state making the demand, as authentic. Indeed, the governor's authentication of such an affidavit would have no force and effect here, as that is not the mode prescribed by law for the authentication of the records and judicial proceedings of another state, and the only reason why the governor's authentication of the indictment or affidavit showing that the person demanded is charged with crime is sufficient, is that it is expressly so provided by the act of 1793. It follows, therefore, that if the fact that the person demanded is a fugitive from justice must be proven, it must be by some evidence other than that which would be furnished by an affidavit authenticated by the governor of the state making the demand. Whether evidence of such fact is necessary, and how it ought to be adduced, we do not think it necessary, in this case, to inquire, for we think it sufficiently appears from the papers before us that, *prima facie* at least, the petitioner is a fugitive from justice, in the sense of those terms as used in the constitution of the United States. The copy of the affidavit accompanying the requisition, which is duly authenticated in the manner prescribed by the act of congress, and which we are bound to assume as at least *prima facie* true, shows that the petitioner committed the offence of riot in the State of Georgia, and this is sufficient to show that he was then in that state, and his appearance here, as well as his statements in his petition, shows that he was afterwards found in this state,

and this, in our judgment, is quite sufficient to show that he is a fugitive from justice in the sense of those terms as used in the constitution, for, manifestly, those terms were intended to embrace not only a case where a party after committing a crime actually *flees*, in the literal sense of that term, from the state where such crime was committed, but also a case where a citizen of one state, who, within the territorial limits of another state, commits a crime, and then simply returns to his own home. The object of the constitution was to enable a state whose laws had been violated, to secure the arrest of the person charged with such violation, even though such person might be beyond the reach of the ordinary process of such state. In addition to this, while the petitioner does say, in his petition, that "he is not conscious of having committed any offence against the laws of the State of Georgia or of this state, and that he is not, and never has been, a fugitive from justice from the State of Georgia," he does *not* deny that he was in the State of Georgia at the time when and place where, by the affidavit, he is charged with having committed the crime of riot, and his denial that he is a fugitive from justice must be regarded as a mere denial of a legal conclusion, and not a denial of the fact that he was in the State of Georgia at the time when and the place where the crime was alleged to have been committed. It may be remarked, however, that to allow the existence of this fact to be put in issue before the courts of the state upon which the demand is made, would, in many if not most instances, draw after it the right to inquire into the merits, the very thing which the constitution and the act of congress was designed to prevent. For if a party, when in custody in this state under a warrant of extradition, could, upon an application for his discharge under a writ of *habeas corpus*, by his own affidavit or otherwise, raise the question as to whether he was in the state where he was alleged to have committed a crime at the time when and the place where such crime was alleged to have been committed, it is perfectly manifest that the tribunals of this state, which have no jurisdiction whatever of the offence charged, would thereby be called upon to determine the sufficiency of at least one ground of defence, that of *alibi*, which the party charged would be at liberty to set up, and would, to that extent, be

entering upon the trial of a case of which they confessedly have no jurisdiction.

It seems to us that the true rule is that when a requisition comes to the governor of this state for any person found in this state, which shows upon its face that all the requirements of the act of congress have been complied with, it is the duty of the proper authorities of this state to recognize the statements of fact made therein as true, and to surrender to the agent of the state making the demand the person demanded, in the fullest confidence that he will receive ample justice at the hands of the authorities of such state. The very fact that there is no mode of enforcing the performance of the duty imposed upon the governor of the state upon which the demand is made, by *mandamus* or otherwise, (*Kentucky* v. *Dennison, supra,*) makes it all the more obligatory that he should be scrupulously exact and prompt in the performance of such duty, and the courts should not lend their aid to defeat the provisions of the constitution so essential to the preservation of that good will which ought always to exist between sister states, by demanding more than is required by the act of congress.

The views hereinbefore presented are, we think, amply supported by the following cases: *Kingsbury's case,* 106 *Mass.* 223 ; *Clark's case,* 9 *Wend.* 212 ; *In re Voorhees,* 32 *N. J.* 141 ; *Johnston* v. *Riley,* 13 *Ga.* 133, as well as by an elaborate article upon the subject of extradition between states, in *Am. L. Rev., (Jan.,* 1879,) *vol. XIII., p.* 181.

The case of *In re Jackson,* decided in the United States District Court for the Western District of Michigan, and reported in *Am. L. Rev., (April,* 1878,) *vol. XII., p.* 602, seems to have been mainly relied upon by the counsel for the petitioner, and does seem at first view to maintain the proposition contended for by him. But aside from the fact that this decision is not authority which is of any binding force here, a close examination of the case will show that it does not really sustain the position of the counsel under the facts presented in the case now before the court. In that case Jackson was in the custody of the agent of the State of Massachusetts, and in his return to the writ of *habeas corpus* he sets up the warrant issued by the governor of

F

Michigan as the cause of the petitioner's detention. The objection to the warrant was that it did not state that it had been satisfactorily shown to the governor of Michigan that Jackson had fled from the State of Massachusetts or from justice, and the only question considered by the judge was whether such a statement in the warrant was sufficient proof of the fact that Jackson was a fugitive from justice. He manifestly did not have before him the evidence which we have in this case, viz., the copy of the affidavit showing that the person demanded is charged with crime, and if he had, would probably have come to the same conclusion which we have reached. For he says : "Unless it be shown that the relator was in Massachusetts at or about the time when the offence is charged to have been committed, and has since that time departed that state, there would be no just or legal ground for saying he had fled from justice in Massachusetts." Here, as we have seen, these facts do appear from the copy affidavit accompanying the requisition and from the other proceedings in the case. The judge cites and relies upon the case of *Ex parte Thornton,* 9 *Tex.* 635, but admits that the exact point now made was not raised in the case. The question in that case was as to the sufficiency of the governor's warrant, which merely recited that it had been represented by the governor of Arkansas that Thornton stands charged with the crime of forgery, but failed to state that such representation was accompanied by an authenticated copy of an indictment or affidavit charging Thornton with the crime, and so far as we can see, from the statement which is made of the case, in the opinion of the District judge, not having access to the book of reports in which the case is contained, no question whatever as to the necessity of proving that the person demanded is a fugitive from justice was raised. The case of *Ex parte Smith,* 3 *McLean* 121, is also cited and relied upon. In that case the requisition was made by the governor of Missouri on the governor of Illinois, the state in which Smith lived. From the affidavit on which the proceedings were founded it appeared that the affiant, while sitting in his house, in Missouri, was shot at, with intent to kill, and that the affiant believed that Smith was "accessory before the fact of the intended murder," but it nowhere appeared in the affidavit

that Smith had fled from or had ever been in the State of Missouri, for it might be entirely true that he was an accessory before the fact, and yet never have left his home in Missouri. The court held that it should have appeared distinctly in the affidavit that "Smith had committed a crime, and that he committed it in Missouri." This case, therefore, so far from being in conflict with, sustains the view which we have adopted. Here the affidavit does show that Swearingen committed a crime and that he committed it in Georgia.

Another ground taken is that even if the requisition from the governor of Georgia be, in every respect, in conformity with law, yet the mandate issued by the governor of this state was insufficient to authorize the arrest of the petitioner, inasmuch as it does not, in express terms, order the *arrest* of the petitioner, but only directs that he be *delivered* to the agent of the State of Georgia. We do not think it at all important to inquire whether the mandate was sufficient to authorize the arrest of the petitioner. The petitioner claims that he is illegally detained in the custody of the sheriff, and the only question before us is not as to the legality of his arrest, but as to the legality of his detention, and the cause shown for that is the mandate of the governor of this state, issued in pursuance of a requisition from the governor of Georgia. If that requisition is in conformity to the provisions of the act of congress, as we have already ascertained it to be, the madate of the governor of this state to deliver the petitioner to the agent of the State of Georgia necessarily follows, and it matters not in this inquiry how the sheriff originally acquired the custody of the petitioner. *Dow's case*, 18 *Penna. St.* 37. When he is brought before us the return shows that he is now in custody by a lawful warrant for a lawful purpose.

We are unable to see any ground upon which the petitioner could claim his discharge. His motion has, therefore, been heretofore refused, and an order remanding him granted.

McGowan, A. J., concurred.

Willard, C. J. I am unable to concur with the majority of the court. In my judgment, the provision of the constitution

under which the demand for the rendition of the relator is made, confers upon the state of which the demand is made authority to determine whether the conditions on which the right to demand a fugitive from justice exist. One of these conditions is, that it shall appear that the person demanded has fled from justice to the state of which the demand is made. Unless the congress of the United States have, in a competent and effective manner, prescribed otherwise, the question arising under the constitution is a judicial question. It involves the existence of a condition on which the liberty of the citizen depends, and therefore is, in its nature, judicial. No statute of this state prescribes the authority by which this fact is to be determined. There is nothing, then, to prevent the court from inquiring whether the conditions exist warranting the interference that is claimed with the liberty of the relator, unless the act of congress provides in a competent manner for the mode of ascertaining whether the person demanded is a fugitive from justice, and that fact must be established conformably to the laws of this state where it is questioned in a court of competent jurisdiction. The act of congress is entirely silent as to the proper means of establishing the fact that the person demanded has fled from justice, and, indeed, does not render it necessary that the executive of the state making the demand should affirm the existence of such fact. Under these circumstances, as it is not competent for congress to dispense with the constitutional requirement in this respect, it must be concluded that the question of the authority of the laws of the state, in ascertaining the proper mode of exercising the power conferred by the constitution, remains unaffected by the act of congress, and that such was the intention of that act.

It is necessary, therefore, that the demandant state should show in some competent manner that the relator has fled from justice. As this court has a general competency by *habeas corpus* to inquire into the validity of any claim to deprive a citizen of his liberty, this proceeding being of that nature, it is the duty of the demandant state to establish before us the fact that the relator has fled from justice in the sense of the constitution.

I am of the opinion that this has not been done. It is the duty of the demandant state to allege the facts upon which the

right of demand depends. The requisition of the governor of Georgia does not, in my judgment, affirm in a competent manner the important jurisdictional fact that the relator has fled from justice as the constitution prescribes. The requisition merely states that it has been represented to the governor of that state that the relator has fled from justice from that state; but it is not stated that such representations are satisfactory to the governor making the demand, or that he believes such representations to be true.

There is, in my judgment, an equal defect as it regards the proof demandable of the State of Georgia. The process under which it is sought to deprive the relator of his liberty is in derogation of the common law, and every fact necessary to warrant it is jurisdictional, and must be both alleged and proven. The competency of the proof must be determined by the laws of this state, where there is no conflicting rule established by competent authority displacing these laws. The only evidence on the part of the demandant state to which our attention has been called for the purpose of proving that the relator has fled from justice, is contained in the affidavit taken in Georgia before a magistrate of that state, which constitutes the charge made against the relator in the Criminal Court of Georgia, a copy of which only is before us, having been transmitted by the governor of Georgia. It is clear that a copy of an affidavit sworn in the State of Georgia before a person not competent to administer an oath, so as to make competent testimony to be used before the courts of this state, is, in itself, incompetent proof of any fact in which the liability of the citizen depends in the courts. Before testimony can subserve such a purpose, it must, except in a restricted class of cases, to which the present does not belong, be given under the sanction of an oath, carrying with it the penal consequences of false swearing. The proof in question can only be received where it is made such by competent authority. It will not be pretended that the act of congress makes the copy of the indictment or affidavit transmitted by the demandant state proof of any fact beyond that, that the relator has been charged with crime in the State of Georgia.

It certainly does make the requisition of the governor of

Georgia, when accompanied by a true copy of the indictment or affidavit constituting the charge, competent proof that such charge had been made in the state, but beyond that it does not accredit the copy affidavit with authority as proof in the courts of this state. It may be said that the affidavit in question only inferentially states that the relator was in the State of Georgia at the time when the alleged offence was committed, such inferences being based on the formal expressions that constitute the allegations of time and venue material to the certainty of the charges, and that if it was conceded that the affidavit was competent for any purpose other than that of proving the existence and nature of the charge that was made by means of it, still it lacks the certainty material to the allegation of a fact on which the claim to interfere with the liberty of a citizen depends; but as I am satisfied that the affidavit is incompetent as proof of any fact except as to the existence and nature of the charge made in Georgia, it is unnecessary to comment on this particular defect of the proof sought to be obtained from the affidavit.

In my judgment it was for the demandant state to affirm and establish the fact that the relator had fled from justice, and if it be true that the relator has not traversed that fact, that circumstance is immaterial, as he was not bound to traverse it until it was alleged in a competent manner. One cannot be prejudiced by his silence except when the law compels him to speak, and the relator had a perfect right to remain silent and cast upon the demandant state the *onus* of showing its right to interfere with his liberty.

There are certain legal conclusions that arise from the very foundation of our ideas of judicial administration, so rooted in principle and sanctioned by a common sense of justice that even the construction of statutes and constitutions must yield to their irresistible force. It is such a conviction that leads me to the conclusions that have already been stated. Is it possible that a state would, by its judicial authority, surrender to another state one of its citizens, to be tried on a charge of crime, where it appears that the crime was of such a nature that it could not have been committed, unless the party charged with such offence was personally present in the state at the time of the alleged com-

mission of the offence, and when it further appears that such citizen had never been in the state where, it is alleged, such offence was committed! Such a proposition coming from a state neglecting so important a public duty could only be regarded as an abdication of its dignity and authority, either through neglect of duty or timidity in discharging it. So it would be equally reprehensible to dispense with the sanctions of the rules of evidence that govern the administration of justice, in order to yield a mere perfunctory obedience to the requirements of the act of congress, when it is called upon, in my judgment, to perform an important judicial act, no less than that of applying to the citizen the safeguard of liberty, secured by the constitution of the United States itself.

In my judgment there is not competent proof to warrant the surrender of the relator to the public authorities of the State of Georgia.

Motion refused.