# ROBB *v.* CONNOLLY.

### IN ERROR TO THE SUPREME COURT OF CALIFORNIA.

Submitted April 7th, 1884.—Decided May 5th, 1884.

*Constitutional Law—Fugitives from Justice—Conflict of Law.*

An agent, appointed by the State in which a fugitive from justice stands charged with crime, to receive such fugitive from the State by which he is surrendered, is not an officer of the United States within the meaning of former adjudications of this court.

Congress has not undertaken to invest the judicial tribunals of the United States with exclusive jurisdiction of issuing writs of *habeas corpus* in proceedings for the arrests of fugitives from justice, and their delivery to the authorities of the State in which they stand charged with crime.

Subject to the exclusive and paramount authority of the national government by its own judicial tribunals to determine whether persons held in custody by authority of the courts of the United States, or by commissioners of such courts, or by officers of the general government acting under its laws, are so held in conformity with law, the States have the right, by their own courts, or by the judges thereof, to inquire into the grounds upon which any person, within their respective territorial limits, is restrained of his liberty, and to discharge him, if it be ascertained that such restraint is illegal, and this notwithstanding such illegality may arise from a violation of the Constitution and laws of the United States.

On the 20th day of November, 1883, one C. H. Bayley was arrested in the city of San Francisco, California, and delivered to W. L. Robb, who had been empowered by the Governor of the State of Oregon to take and receive him from the proper authorities of the State of California, and convey him to the former State, to be there dealt with according to law.

The arrest and delivery were in pursuance of the warrant of the Governor of California, as follows :

"STATE OF CALIFORNIA, *Executive Department.*

"The people of the State of California to any sheriff, constable, marshal, or policeman of this State, greeting :

"Whereas it has been represented to me by the Governor of the State of Oregon that C. H. Bayley stands charged with the crime of embezzlement, committed in the county of Clatsop, in said State, and that he has fled from the justice of that State, and has taken refuge in the State of California ; and the said Governor of the State of Oregon having, in pursuance of the Constitution and laws of the United States, demanded of me that I shall cause the said C. H. Bayley to be arrested and delivered to W. L. Robb, who is authorized to receive him into his custody and convey him back to said State of Oregon ;

"And whereas the said representation and demand is accompanied by a certified copy of the information filed in the office of the justice of the peace of the precinct of Astoria, Clatsop county, State of Oregon, whereby the said C. H. Bayley stands charged with said crime, and with having fled from said State and taken ·

refuge in the State of California, which is certified by the Governor of the State of Oregon to be authentic :

" You are, therefore, required to arrest and 'secure the said C. H. Bayley, wherever he may be found within this State, and to deliver him into the custody of the said W. L. Robb, to be taken back to the State from which he fled, pursuant to the said requisition, he, the said W. L. Robb, defraying all costs and expenses incurred in the arrest and securing of said fugitive. You will make return to this department of the manner in which this warrant has been executed.

" In witness whereof I have hereunto set my hand and caused the great seal of the State to be affixed, this, the twentieth day of November, in the year of our Lord one thousand eight hundred and eighty-three.

" [SEAL.]                         " GEORE STONEMAN,
          " *Governor of the State of California,*
                         " By A. E. SHATTUCK, *Deputy.*

" By the Governor :
    " THOS. L. THOMPSON, *Secretary of State.*"


Bayley sued out a writ of *habeas corpus* from the judge of the Superior Court for the City and County of San Francisco, directed to Robb, and commanding him to have the body of the petitioner before said judge, together with the time and cause of his detention, &c. His application for the writ proceeded upon the ground that the imprisonment and detention were illegal, in that " no copy of an indictment found or affidavit 'made, before a magistrate, charging petitioner with any crime, was produced to the Governor of California," and consequently, that the warrant of arrest was issued without compliance with the act of Congress.

Robb made return that he held Bayley " under the authority of the United States," as evidence whereof he produced a copy of the warrant of the Governor of California, with his commission from the Governor of Oregon, authorizing him to take and receive the prisoner as a fugitive from justice. He refused " to produce said C. H. Bayley, on the ground that, under the laws of the United States, he ought not to produce said prisoner, because the honorable Superior Court has no

power or authority to proceed in the premises." For this refusal—the court finding that the body of the petitioner could be produced—Robb was adjudged guilty of contempt of court, and by order of the judge he was arrested by the sheriff and committed to jail until he "obeys said writ and produces the body of the said C. H. Bayley," or "until he be otherwise legally discharged." He thereupon sued out a writ of *habeas corpus* from the Supreme Court of California. His application proceeded on the ground that Bayley was in his custody "under and by virtue of the authority of the United States, and that said Superior Court had no jurisdiction to proceed in the premises," and " his [Robb's] imprisonment is contrary to the laws of the United States and in excess of the jurisdiction of said court." Upon hearing, the writ was dismissed, and Robb remanded to the custody of the sheriff.

"It is no part of our duty," said the Supreme Court of California, "to decide whether the authority under which Robb holds the prisoner Bayley is sufficient or not. Neither is it incumbent on us to decide whether Bayley is held under the authority of the United States, and if so, how far it is competent for the court below to inquire into the legality of the proceedings under which he is held. Whether an affidavit or indictment must accompany the requisition or not; whether the recitals in the governor's warrant of arrest are conclusive or simply *prima facie* evidence of the facts they recite, all these are matters for the consideration of the court issuing the writ and before whom the prisoner is to be brought. The only inquiry in this case relates to the power of the court below to compel *the production of the body* of the prisoner before it, so that the cause of his imprisonment and detention can be inquired into, and on this point we have no doubt. It was not the duty of the court issuing the writ, nor was it obliged to accept as true, the return of the party. It was within the jurisdiction of the court, at least, to inquire into the facts of the case and the alleged cause of detention, and to this end it was proper that the prisoner should be brought into the presence of the court, in obedience to the command of the writ, whereupon the prisoner would have had a right to

traverse the return. *People* v. *Donohue*, 84 N. Y. 438; *People* v. *Brady*, 56 Id. 182; *Norris* v. *Newton*, 5 McLean, 92; *State* v. *Schlemn*, 4 Harr. (Del.) 577. This the petitioner refused to do, and by such refusal was guilty of a contempt of court."

From the judgment dismissing the writ and remanding Robb to the custody of the sheriff, he prosecuted this writ of error.

*Mr. H. G. Sieberst* and *Mr. Alfred Clarke*, for plaintiff in error.

*Mr. A. C. Searle* and *Mr. E. C. Marshal*, Attorney-General of California, for defendant in error.

Mr. Justice Harlan delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

For the purpose of giving effect to the second section of article four of the Constitution of the United States, declaring that "a person charged in any State with treason, felony, or other crime, who shall flee from justice and be found in another State, shall on the demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime," Congress passed the act of February 12th, 1793, in relation to fugitives from justice. 1 Stat. 302. The provisions of its first and second sections have been re-enacted in sections 5278 and 5279 of the Revised Statutes, which are as follows:

"SEC. 5278. Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and cause notice of the arrest to be given to the executive authority making such demand or to the agent of such authority appointed to receive the fugi-

tive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appear, within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory.

"SEC. 5279. Any agent so appointed who receives the fugitive into his custody, shall be empowered to transport him to the State or Territory from which he has fled. And every person who, by force, sets at liberty or rescues the fugitive from such agent while so transporting him, shall be fined not more than five hundred dollars or imprisoned not more than one year."

The penal code of California, in conformity with the constitution of that State, provides, in reference to the Superior Court of the City and County of San Francisco, that "said court and their judges, or any of them, shall have power to issue writs of *mandamus, certiorari, prohibition, quo warranto,* and *habeas corpus,* on petition by or on behalf of any person in actual custody in their respective counties."

The authority and duty of the judge of that court to issue a writ of *habeas corpus* upon Bayley's application is not disputed in argument. But the contention of the plaintiff in error is, that in receiving and holding Bayley for the purpose of transporting him to Oregon he was, and ir, acting under the authority and executing the power of the United States; and, therefore, that neither the Superior Court of San Francisco, nor one of its judges, could legally compel him to produce the prisoner, or commit him, as for contempt, for refusing to do so. If that court was without jurisdiction, by reason of the paramount authority of the Constitution and laws of the United States, to compel the plaintiff in error, in response to the writ of *habeas corpus,* to produce the prisoner, then his committal for contempt was the denial of a right, privilege, and immunity secured by the supreme law of the land. The claim by the plaintiff in error that there was such a denial constitutes the foundation of our jurisdiction.

It is contended that the principles announced in *Abieman* v. *Booth,* and *United States* v. *Booth,* 21 How. 506, and in *Tarble's*

*Case*, 13 Wall., 397, sustain the refusal of the plaintiff in error to produce the prisoner. The soundness of this position will be the subject of our first inquiry.

In *Ableman* v. *Booth*, the general question was as to the authority of a justice of the Supreme Court of Wisconsin, upon a writ of *habeas corpus*, to compel the marshal of the United States to produce the body of one, committed to his custody by an order of a commissioner of a circuit court of the United States, for failing to give bail for his appearance in the district court of the United States for that State, to answer a charge of having violated the provisions of the fugitive slave act of September 18th, 1850. In other words, a judge of the supreme court of the State claimed and exercised the right to supervise and annul the proceedings of that commissioner, and to discharge a prisoner committed by him for an offence against the laws of the general government. In *United States* v. *Booth*, the question was as to the authority of a justice of the supreme court of the same State, upon a writ of *habeas corpus*, to discharge one in custody, under a judgment of the district court of the United States, in which he had been indicted for an offence against the laws of the United States, and by which he had been sentenced to be imprisoned for one month, to pay a fine of $1,000 and costs of prosecution, and to remain in custody until the sentence was complied with. The authority claimed by the justice who issued the writ and discharged the prisoner was affirmed by the supreme court of the State, and hence, as was said, the State court claimed and exercised jurisdiction over the proceedings and judgment of a district court of the United States, and, upon a summary and collateral proceeding, by *habeas corpus*, set aside and annulled its judgment, and discharged a prisoner who had been tried and found guilty of an offence against the laws of the United States, and sentenced to imprisonment by the district court. 21 How. 513, 514.

It was held that no such paramount power existed in any State, or her tribunals, since its existence was inconsistent with the supremacy of the general government, as defined and limited by the Constitution of the United States and the laws made in pursuance thereof, and could not be recognized with-

out bringing within the control of the States the entire criminal code of the United States, including all offences, from the highest to the lowest, involving imprisonment as a part of the punishment inflicted. While the sovereignty of the State within its territorial limits to a certain extent was conceded, that sovereignty, the court adjudged, was so limited and restricted by the supreme law of the land, that the sphere of action appropriated to the United States was as entirely beyond the reach of the judicial process issued by a State judge or a State court, as the proceedings in one of the States were beyond the reach of the process of the judicial tribunals of another State.

" We do not question," said this court, " the authority of a State court, or judge, who is authorized by the laws of the State to issue the writ of *habeas corpus*, to issue it in any case where the party is imprisoned within its territorial limits, provided it does not appear, when the application is made, that the person imprisoned is in custody under the authority of the United States. The court or judge has a right to inquire, in this mode of proceeding, for what cause and by what authority the prisoner is confined within the territorial limits of the State sovereignty. And it is the duty of the marshal, or other person having the custody of the prisoner, to make known to the judge or court, by a proper return, the authority by which he holds him in custody. This right to inquire by process of *habeas corpus*, and the duty of the officer to make a return, grows, necessarily, out of the complex character of our government, and the existence of two distinct and separate sovereignties within the same territorial space, each of them restricted in its powers, and each, within its sphere of action prescribed by the Constitution of the United States, independent of the other. But, after the return is made, and the State judge or court judicially apprized that the party is in custody under the authority of the United States, they can proceed no further. They then know that the prisoner is within the dominion and jurisdiction of another government, and that neither the writ of *habeas corpus*, nor any other process issued under State authority, can pass over the line of division between the two sovereignties. He is then within the dominion and exclu-

sive jurisdiction of the United States. If he has committed an offence against their laws, their tribunals alone can punish him. If he is wrongfully imprisoned, their judicial tribunals can release him and afford him redress. And although, as we have said, it is the duty of the marshal, or other person holding him, to make known, by a proper return, the authority under which he detains him, it is at the same time imperatively his duty to obey the process of the United States, to hold the prisoner in custody under it, and to refuse obedience to the mandate or process of any other government. And, consequently, it is his duty not to take the prisoner, nor suffer him to be taken, before a State judge or court upon a *habeas corpus* issued under State authority. No State judge or court, after they are judicially informed that the party is imprisoned under the authority of the United States, has any right to interfere with him, or to require him to be brought before them. And if the authority of a State, in the form of judicial process or otherwise, should attempt to control the marshal or other authorized officer or agent of the United States, in any respect, in the custody of his prisoner, it would be his duty to resist it, and to call to his aid any force that might be necessary to maintain the authority of law against illegal interference. No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence." 21 How., 523.

Before considering the scope and effect of that decision, it is proper to examine *Tarble's case*, 13 Wall. 397, which is, also, relied on to support the proposition that the judge of the State court was without jurisdiction to compel the plaintiff in error. to produce the body of the alleged fugitive from justice. In that case the question was whether a judicial officer of a State, or a commissioner of a State court, had jurisdiction, upon *habeas corpus*, to inquire into the validity of the enlistment of soldiers in the military service of the United States, and to discharge them from such service when, in his judgment, their enlistment had not been made in conformity with law. " It is evident,"

said the court, "if such jurisdiction may be exercised by any judicial officer of a State, it may be exercised by the court commissioner within the county for which he is appointed; and if it may be exercised with reference to soldiers detained in the military service of the United States, whose enlistment is alleged to have been illegally made, it may be exercised with reference to persons employed in any other department of the public service when their illegal detention is asserted. It may be exercised in all cases where parties are held under the authority of the United States, whenever the invalidity of the exercise of that authority is affirmed. The jurisdiction, if it exist at all, can only be limited in its application by the legislative power of the State. It may even reach to parties imprisoned under sentence of the National courts, after regular indictment, trial and conviction, for offences against the laws of the United States." 13 *Wall.*, 402. The grounds of the decision in *Ableman* v. *Booth* and *United States* v. *Booth* were fully examined, and the conclusion reached is indicated in the following extract from the opinion: "State judges and State courts, authorized by laws of their States to issue writs of *habeas corpus*, have undoubtedly a right to issue the writ in any case where a party is alleged to be illegally confined within their limits, unless it appear, upon his application, that he is confined under the authority, or claim and color of the authority, of the United States, by an officer of that government. If such fact appear upon the application the writ should be refused. If it do not appear, the judge or court issuing the writ has a right to inquire into the cause of imprisonment, and ascertain by what authority the person is held within the limits of the State; and it is the duty of the marshal, or other officer having the custody of the person, to give, by a proper return, information in this respect." *Ib.*, 409. Alluding to the fact that the language used in *Ableman* v. *Booth* and *United States* v. *Booth* had been construed by some as applying only to cases where a person is held in custody under the undisputed lawful authority of the United States, as distinguished from his imprisonment under mere claim and color of such authority, the court rejected any such limitation upon the

decisions in those cases, and said : " All that is meant by the language used is, that the State judge or State court should proceed no further when it appears, from the application of the party, or the return made, that the prisoner is held by an officer of the United States under what, in truth, purports to be the authority of the United States; that is, an authority, the validity of which is to be determined by the Constitution and laws of the United States. If a party thus held be illegally imprisoned, it is for the courts or judicial officers of the United States, and those courts and officers alone, to grant him release." *Ib.*, 411. It was adjudged that the State court commissioner was without jurisdiction to issue the writ for the discharge of the prisoner in that case, because it appeared, upon the application presented for the writ, that "the prisoner was held by an officer of the United States, under claim and color of the authority of the United States, as an enlisted soldier mustered into the military service of the national government; and the same information was imparted to the commissioner by the return of the officer."

From this review of former decisions, it is clear that the question now presented has never been determined by this court. In *Ableman* v. *Booth*, the prisoner, as we have seen, was held in custody by an officer of the United States, under a warrant of commitment from a commissioner of a Circuit Court of the United States, for an offence against the laws of the general government. In. *United States* v. *Booth*, he was in custody in pursuance of a judgment of a court of the United States founded upon an indictment, charging him with an offence against the laws of the United States. In *Tarble's case*, the person whose discharge was sought was held as. an enlisted soldier of the army, by an officer of that army acting directly under the Constitution and laws of the United States.

No such questions are here presented, unless it be, as claimed, that the plaintiff in error is, within the principles of former adjudications, an officer of the United States, wielding the authority and executing the power of the nation. We are all of opinion that he was not such an officer, but was and is simply an agent of the State of Oregon, invested with authority

to receive, in her behalf, an alleged fugitive from the justice of that State. By the very terms of the statute under which the executive authority of Oregon demanded the arrest and surrender of the fugitive, he is described as the "agent of such authority." It is true that the executive authority of the State in which the fugitive has taken refuge, is under a duty imposed by the Constitution and laws of the United States, to cause his surrender upon proper demand by the executive authority of the State from which he has fled. It is equally true that the authority of the agent of the demanding State to bring the fugitive within its territorial limits, is expressly conferred by the statutes of the United States, and, therefore, while so transporting him, he is, in a certain sense, in the exercise of an authority derived from the United States. But these circumstances do not constitute him an officer of the United States, within the meaning of former decisions. He is not appointed by the United States, and owes no duty to the national government, for a violation of which he may be punished by its tribunals or removed from office. His authority, in the first instance, comes from the State in which the fugitive stands charged with crime. He is, in every substantial sense, her agent, as well in receiving custody of the fugitive, as in transporting him to the State under whose commission he is acting. What he does, in execution of that authority, is to the end that the violation of the laws of his State may be punished. The fugitive is arrested and transported for an offence against her laws, not for an offence against the United States. The essential difference, therefore, between the cases heretofore determined and the present one is, that in the former, the judicial authorities of the State claimed and exercised the right, upon *habeas corpus*, to release persons held in custody in pursuance of the judgment of a court of the United States, or by order of a Circuit Court commissioner, or by officers of the United States in execution of their laws; while, in the present case, the person who sued out the writ was in custody of an agent of another State, charged with an offence against her laws.

Underlying the entire argument in behalf of the plaintiff in error is the idea that the judicial tribunals of the States are ex-

cluded altogether from the consideration and determination of questions involving an authority, or a right, privilege, or immunity, derived from the Constitution and laws of the United States. But this view is not sustained by the statutes defining and regulating the jurisdiction of the courts of the United States. In establishing those courts, Congress has taken care not to exclude the jurisdiction of the State courts from every case to which by the Constitution, the judicial power of the United States extends. In the Judiciary Act of 1789 it is declared that the Circuit Courts of the United States shall have original cognizance, " concurrent with the courts of the several States," of all suits of a civil nature, at common law or in equity, involving a certain amount, in which the United States are plaintiffs or petitioners, or an alien is a party, or the suit is between a citizen of the State where the suit is brought and a citizen of another State. By section 711 of the Revised Statutes of the United States, as amended by the act of February 18th, 1875, jurisdiction, exclusive of the courts of the several States, is vested in the courts of the United States of all crimes and offences cognizable under the authority of the United States ; of all suits for penalties and forfeitures incurred under their laws ; of all civil causes of admiralty and maritime jurisdiction ; of seizures under the laws of the United States, on land or on waters not within admiralty and maritime jurisdiction ; of all cases arising under the patent-right or copyright laws of the United States ; of all matters and proceedings in bankruptcy ; and of all controversies of a civil nature, where a State is a party, except between a State and its citizens, or between a State and citizen of other States, or aliens ; the jurisdiction of the States remaining unaffected in all other cases to which the judicial power of the United States may be extended. And by the act of March 3d, 1875, the original jurisdiction of the Circuit Courts of the United States is enlarged so as to embrace all suits of a civil nature, at common law or equity, involving a certain amount, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or in which the United States are plaintiffs or petitioners, or in which there shall be a contro-

versy between citizens of different States, or a controversy
between citizens of the same State claiming lands under grants
of different States, or a controversy between citizens of a State
and foreign States, citizens, or subjects.    But it is expressly
declared that in such cases their jurisdiction is " concurrent
with the courts of the several States "—the jurisdiction of the
latter courts being, of course, subject to the right to remove
the suit into the proper court of the United States, at the time
and in the mode prescribed, and to the appellate power of this
court, as established and regulated by the Constitution and
laws of the United States.    So, that a State court of original
jurisdiction, having the parties before it, may, consistently with
existing Federal legislation, determine cases at law or in equity,
arising under the Constitution or laws of the United States, or
involving rights dependent upon such Constitution or laws.
Upon the State courts, equally with the courts of the Union,
rests the obligation to guard, enforce, and protect every right
granted or secured by the Constitution of the United States,
and the laws made in pursuance thereof, whenever those rights
are involved in any suit or proceeding before them ; for the
judges of the State courts are required to take an oath to sup-
port that Constitution, and they are bound by it, and the laws
of the United States made in pursuance thereof, and all treaties
made under their authority, as the supreme law of the land,
" anything in the Constitution or laws of any State to the con-
trary notwithstanding."    If they fail therein, and withhold or
deny rights, privileges, or immunities secured by the Constitu-
tion and laws of the United States, the party aggrieved may
bring the case from the highest court of the State in which the
question could be decided to this court for final and conclusive
determination.

The recognition, therefore, of the authority of a State court,
or of one of its judges, upon writ of *habeas corpus,* to pass
upon the legality of the imprisonment, within the territory of
that State, of a person held in custody—otherwise than under
the judgment or orders of the judicial tribunals of the United
States, or by the order of a commissioner of a Circuit Court, or
by officers of the United States acting under their laws—

cannot be denied merely because the proceedings involve the determination of rights, privileges, or immunities derived from the nation, or require a construction of the Constitution and laws of the United States. Congress has not undertaken to invest the judicial tribunals of the United States with exclusive jurisdiction of issuing writs of *habeas corpus* in proceedings for the arrest of fugitives from justice and their delivery to the authorities of the State in which they stand charged with crime. When a demand has been made, in accordance with the Constitution of the United States, by the State from which the fugitive has fled, upon the executive authority of the State in which he is found, that instrument, indeed, makes it the duty of the latter to cause his arrest and surrender to the executive authority of the demanding State, or to the agent of such authority. But if it should appear, upon the face of the warrant issued for the arrest of the fugitive, that such demand was not accompanied or supported by a copy, certified to be authentic, of any indictment found against the accused, or of any affidavit made before a magistrate of the demanding State, charging the commission by him of some crime in the latter State, could it be claimed that the arrest of the fugitive would be in pursuance of the acts of Congress, or that the agent of the demanding State had authority from the United States to receive and hold him to be transported to that State?

This question could not be answered in the affirmative, except upon the supposition, not to be indulged, that, so far as the Constitution and the legislation of Congress are concerned, the transporting of a person beyond the limits of the State in which he resides, or happens to be, to another State, depends entirely upon the arbitrary will of the executive authorities of the State demanding and of the State surrendering him. Whether the warrant of arrest, issued by the Governor of California for the arrest of Bayley, appeared, upon its face, to be authorized and required by the act of Congress; that is, whether, upon its face, a case was made behind which the State courts or officers could not go, consistently with the Constitution and laws of the United States, are questions upon which it is unnecessary to express an opinion. What we decide—and

the present case requires nothing more—is, that, so far as the Constitution and laws of the United States are concerned, it is competent for the courts of the State of California, or for any of her judges—having power, under her laws, to issue writs of *habeas corpus*, to determine, upon writ of *habeas corpus*, whether the warrant of arrest and the delivery of the fugitive to the agent of the State of Oregon, were in conformity with the statutes of the United States; if so, to remand him to the custody of the agent of Oregon. And, since the alleged fugitive was not, at the time the writ in question issued, in the custody of the United States, by any of their tribunals or officers, the court or judge issuing it did not violate any right, privilege, or immunity secured by the Constitution and laws of the United States in requiring the production of the body of the fugitive upon the hearing of the return to the writ, to the end that he might be discharged if, upon hearing, it was adjudged that his detention was unauthorized by the act of Congress providing for the arrest and surrender of fugitives from justice, or by the laws of the State in which he was found. The writ was without value or effect unless the body of the accused was produced. Subject, then, to the exclusive and paramount authority of the national government, by its own judicial tribunals, to determine whether persons held in custody by authority of the courts of the United States, or by the commissioners of such courts, or by officers of the general government, acting under its laws, are so held in conformity with law, the States have the right, by their own courts, or by the judges thereof, to inquire into the grounds upon which any person, within their respective territorial limits, is restrained of his liberty, and to discharge him, if it be ascertained that such restraint is illegal; and this, notwithstanding such illegality may arise from a violation of the Constitution or the laws of the United States.

It is proper to say, that we have not overlooked the recent elaborate opinion of the learned judge of the Circuit Court of the United States for the District of California in *In Re Robb*, 19 *Fed. Rep.*, 26. But we have not been able to reach the conclusion announced by him.

For the reasons we have stated, and without considering other questions discussed by counsel, the judgment of the Supreme Court of California must be

*Affirmed.*