(*Superior Court of Cook County.*)

## The People of the State of Illinois ex rel. William Bowers, alias William Smith,

### vs.

## Thomas E. Barrett, Sheriff of Cook County.

### (1905.)

1. EXTRADITION—REVIEW BY COURT OF PROCEEDINGS. The court has jurisdiction in an habeas corpus proceeding to enquire whether the relator has been properly charged with a crime in the demanding state and whether the papers are properly authenticated. The governor's decision is not final but is subject to review by the courts.

2. SAME—DISCRETION OF GOVERNOR. The governor has the right to refuse a warrant of extradition for any reason whether he doubts the good faith of the prosecution or even if he believes that the defendant will not receive a fair trial. There is no power in the courts to compel him to act.

3. SAME—RIGHT OF COURT TO DETERMINE QUESTION OF FACT AS TO WHETHER DEFENDANT IS A FUGITIVE FROM JUSTICE—GOVERNOR'S WARRANT AS EVIDENCE. The court is bound in a habeas corpus

proceeding to determine the question of fact as to whether or not the relator is a fugitive from justice. The governor's warrant is *prima facie* evidence of this fact and the burden is upon the relator to overcome the presumption arising from its issuance, but the relator is entitled to his discharge if he can show that he was not physically present in the demanding state.

Petition for writ of habeas corpus. Cause heard on writ issued by Judge Willard M. McEwen, with Judge John Gibbons sitting as associate.

*Julius Limbach,* attorney for relator.

*F. L. Barnett,* attorney for respondent.

PER CURIAM:—

This cause comes on to be heard on the petition of the relator, William Bowers, for a writ of habeas corpus, the return of Thomas E. Barrett, sheriff, and a replication of relator to said return. The relator is held in custody by virtue of a writ charging him with being a fugitive from justice, issued on complaint before a justice of the peace, and also upon an extradition warrant issued by Hon. Charles S. Deneen, governor, involving the same charge, upon requisition of the governor of the state of New York.

By the pleadings there is sought to be raised by relator the issue of whether or not he was or is a fugitive on the charge mentioned in the extradition proceedings from the state of New York. It appears that an indictment is pending in the county court of the county of Kings, returned by grand jury, entitled ''The People of the state of New York against Frank Brown, etc., and George Whitney, alias William Smith, alias Butch Smith,'' charging the defendants therein with having, on the 24th day of November, A. D. 1905, burglarized the dwelling house of William J. Laroch, in said county of Kings. And it is upon this charge that relator is sought to be extradited. There is no question or dispute before the court, and it is conceded, that the burglary in question was committed on the date charged in the said indictment, but the relator contends that he was not in the state of New York at

or about the time of the said November 24th, 1905, nor at any time during said month of November, and that he was not an accessory to said crime, nor was he in the state of New York at any time when he could have been a party to the crime charged, and is not in fact a fugitive from the justice of the state of New York.

There arises, therefore, the questions: 1st. As a matter of law, has the superior court of Cook county jurisdiction to inquire into and settle the question of fact in an extradition case, whether or not the relator is a fugitive from justice, and, 2nd. If it has such jurisdiction, what weight of evidence is required? 3rd. Is the relator in fact such fugitive?

### WHAT IS THE JURISDICTION OF THE COURT.

The argument is made on behalf of the sheriff, that, because the relator necessarily on such an issue, proves, an alibi, therefore it amounts to making a defense in these proceedings which ought to be made in the state of New York. There is some support in this contention based upon the authority of several cases which adopts this as an argument or reason why a court will not entertain this inquiry and treats the governor's warrant as conclusive. As a matter of principle it does not seem to us that this is a real test. If the constitution of the United States, and the federal statutes, grant the authority to the court to settle this question of fact, then the incident that an alibi and complete defense is shown cannot destroy the authority conferred. In other words, the test is to be found in the power created by the constitution and the federal statutes and not in the consequence of procedure in the court.

The constitution of the United States, article 4, section 2, clause 2, provides as follows: "A person charged in any state with treason, felony or any other crime, who shall flee from justice and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

In order to execute this section of the constitution, congress enacted the following (section 527, Rev. Stat.) : ''Whenever the executive authority of any state or territory demands any person as a fugitive from justice of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded for having committed treason, felony or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled, to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. * * *''

There seems to be no difference among the several courts that the question of whether a relator has been properly charged with a crime in the demanding state, and whether the papers are properly authenticated, and any question of law arising on the face of the paper, may be submitted to the courts to determine the right to extradite. The governor's decision upon such a question of law involved has no finality and is subject to review by the courts. The right seems to be conceded to the governor to refuse his warrant, as a matter of discretion, for any reason, whether he doubts the good faith of the prosecution or even if he considers that defendant sought to be extradited will not receive a fair trial in the court in which he is charged, and there is no power in the courts to compel action by the governor, regardless of the motives or reasons which inspired his refusal to act.

The constitution contemplates that a person shall be ''charged'' in one state, and that he ''shall flee from justice and be found in another state,'' and then the executive ''shall give him up on demand.'' . If the executive has not the final right to determine whether the person demanded is charged legally, it would seem that he had no more of a right to

finally determine that the person charged was in the other
state and fled from its justice. The circumstance that the
former is a question of law and the latter a question of fact,
does not change the principle. If the individual arrested
upon a governor's warrant has a right (1) to be legally
charged with a crime; and (2) to be adjudged a fugitive from
the demanding state, then it is as much his privilege to appeal
to the court in one instance as the other. The statute does
not make the governor a judicial officer to determine con-
clusively the sufficiency of the requisition proceedings. When
the demand is made reciting that a person is charged and
that he is a fugitive, it becomes his duty to issue an extra-
dition warrant for his arrest and transfer for trial. But in
doing so his act is purely executive—purely ministerial. And
that a person seized upon a warrant, to be carried away from
his home and perhaps his witnesses and means of defense to
a foreign jurisdiction, cannot appeal to the court for a de-
termination of the essentials to his extradition, is to leave
him without power to make a contest of fact or law upon
anything which the governor or officials of the demanding
state may represent. To the extent of depriving him of his
liberty until he came under the force of the mittimus of the
court in which he is charged, he would be deprived of his
liberty without due process of law. It may be said that a
party has the right to a trial before the governor. There is
nothing in the law which says that he may, and it rests en-
tirely in the discretion of the governor whether he will issue
his warrant, with or without trial, or not. As a matter of
practice, in the great majority of cases, no hearing or notice
of hearing is ever given to the person involved. If the gov-
ernor has the right arbitrarily to refuse his warrant, then
he has the same power to arbitrarily issue such warrant upon
any showing which he pronounces sufficient. The governor
is presumed to have issued the requisition in discharge of his
official duty. There are no presumptions against the *bona
fides* of his act. His warrant when issued is of the same char-
acter as any other warrant which demands the seizure of the
person. Its authority depends upon the law and the repre-
sentations to the issuing power, and where no direct method

is provided by law for the testing of the sufficiency of the warrant, it is very clear that every court with jurisdiction in habeas corpus proceedings may inquire into the legality of a detention.

The habeas corpus act of this state provides that cause of detention may be inquired into, recites specific instances where the relator may be discharged and provides that a prisoner shall not be discharged, if he is in custody, among other causes, ''for any treason, felony or other crime committed in any other state or territory of the United States, *for which such prisoner ought, by the constitution and laws of the United States,* to be delivered up to the executive power of such state or territory.'' By implication this act contemplates that the court will issue its writ to inquire into causes of this nature, and if the court has the power to issue the writ, which is clear, how is it going to determine whether the prisoner ''ought by the constitution and laws of the United States'' to be delivered up, unless it determine the essentials of extradition, viz., is he legally charged by the demanding state, and has he fled from the justice of that state?

As a matter of authority, the several courts of the different states have disagreed on the right to inquire into the question of fact of the relator being a fugitive. We shall not attempt to distinguish these cases as they are in irreconcilable conflict. The supreme court of Illinois has never determined the question. The decision cited in the brief of the sheriff of a recent case, number 4614, *People ex rel John McNichols v. Thomas Barrett, Sheriff,* in an oral opinion, holds that the governor's warrant in the case involved was issued upon a sufficient affidavit, and does not attempt to decide the question involved here. Counsel for the sheriff contends that in effect, on the facts in the particular case, the supreme court did decide adversely to relator's contention, but conceding that a showing was made in the McNichols case before the supreme court, disputing that he was a fugitive from justice, we can not say but what the supreme court held evidence insufficient rather than adjudging that the subject was not open to inquiry.

The language of the first clause of exceptions affords an

argument by comparison. It says he shall not be discharged if he is held by any process by any court or judge of the United States. No discretion is given to inquire into the process and determine if he ''ought'' to be remanded. Jurisdiction is denied by implication just as it is given in the extradition clause where the court decides whether the relator ''ought'' to be given up.

The authority of the federal courts, as we view it, however, appears to be almost entirely in favor of the right to make an inquiry as to this disputed question. All the power exercised in extradition matters is by virtue of the constitution and the statute. As is said in *Ex parte Morgan*, 20 Fed. 298: ''In a case of this kind the chief executive of the state can not act on the ground of public policy. His power and his only power to extradite a prisoner from his state must be found in the statute and law of the United States, and if it is not there it does not exist. Not only the power, but the manner of its exercise is based exclusively on the constitution of the United States and the law of congress passed in pursuance thereof. Interstate extradition is regulated by law. No such power can ever be exercised by the chief executive of the state on the ground of comity. (Rorer, Inter-State Law, 225.) Nor has it ever been in this country properly and legally exercised on such ground.''

That the federal courts hold that the question is open to judicial inquiry, is stated in *In re Cook*, 49 Fed. 833, 839. ''It is essential, to comply with such executive demand, that the prisoner whose surrender is demanded, should be adjudged a fugitive from justice of the demanding state. The decision of the executive is not conclusive of that fact, and so we are of opinion that the action of the executive is reviewable by federal tribunals, and that it is competent for the court to determine whether or not in fact the demanded prisoner is a fugitive from justice.''

To the same effect is the decision of the supreme court of the United States, in *Roberts v. Reilly*, 116 U. S. 95, on the legal requirement considered the court say: ''It must appear, therefore, to the governor of the state to whom such a

demand is presented, before he can lawfully comply with it, first, that the person demanded is sufficiently charged with the crime against the laws of the state from whose jurisdiction he is alleged to have fled, by an indictment or an affidavit certified to as authentic by the governor of the state making the demand, and second, that the person demanded is a fugitive from the justice of the state the executive authority of which makes the demand.''

Other federal authorities which seem to bear this out, are: *Ex parte Hart*, 10 Am. Crim. Rep. 308, 63 Fed. 249; *Ex parte Joseph Smith*, 3 McLean, 121, 22 Fed. Cas. 373; *Roberts v. Reilly*, 116 U. S. 80; *Hyatt v. People ex rel. Corkran*, 188 U. S. 691.

It is contended by counsel for the sheriff that the latter case is not an authority to support the view, and that inferentially it is to the contrary. The justice pronouncing the decision in that case refers to the possibility of a court refusing to review, in the following language: ''If, upon a question of fact made before the governor, which he ought to decide, there was evidence pro and con, the courts might not be justified in reviewing the decision of the governor upon such question. In a case like that, where there was some evidence sustaining the finding, the courts might regard the decision of the governor as conclusive.'' There is no contention that there was any evidence offered pro and con before the governor in the case at bar. Then the court goes on to say: ''But here, as we have the testimony of the relator (without contradiction) and the stipulation of the counsel as to what the facts were, we have the right and it is our duty on such proof and concession, to say whether a case was made out within the federal statute justifying the action of the governor. It is upon the statute that the inquiry must rest.''

In effect the supreme court holds that it is conclusively shown that relator was not physically present in the demanding state, and that therefore the governor's warrant could be reviewed by the court and held void. If the court had any jurisdiction whatever to consider the weight of relator's evi-

dence, and a stipulation of facts, then it would have the same jurisdiction in another case where such evidence might have been in a less high degree.

In conclusion the court says: "We are of opinion that, as the relator showed, without contradiction upon conceded facts, that he was not within the state of Tennessee at the times stated in the indictments found in court, nor at any time, when the acts were, if ever, committed, he was not a fugitive from justice within the meaning of the federal statute upon that subject, and upon these facts the warrant of the governor of the state of New York was improperly issued. The judgment of the court of appeals, of the state of New York, discharging the relator from imprisonment by reason of such warrant must be affirmed."

Some cases seem to draw distinction between the powers of the federal courts and of the state courts to review this disputed question of fact. There is no difference in principle. The finding of the governor is no more binding on one than on the other. *Ex parte Reggel,* 116 U. S. 642; S. C. 5 Am. Cr. Rep. 218 and note; *Robb v. Connelly,* 111 U. S. 624. The extradition statute does not make any provision regarding courts and their jurisdiction to review. It is necessary, therefore, to go to the general principles of jurisdiction regarding the protection of personal liberty, and both the state and Federal courts in settling the question have to examine into their inherent jurisdiction in the particular case considered. The jurisdiction in habeas corpus matters in Illinois, is of the fullest and most sweeping kind. It is made the duty of every judge in the state upon whom the jurisdiction is conferred, to examine under a penalty into complaints against restrictions upon personal liberty. And so jealous has been the policy of the law in that regard, that no appeal is permitted in habeas corpus cases, and each judge is made free and independent of review or question by a court of appeal. So fixed is this policy that legislators have repeatedly refused, although strongly urged, to pass a law granting such appeals. It becomes, therefore, in every instance a matter for the judgment and conscience of the particular judge who entertains the proceedings.

After an examination of all the authorities presented on both sides, we are forced to the conclusion that both as a matter of principle, and on the best authority, this court is bound to examine into the question of fact.

And we believe the true rule to be that the governor's warrant is *prima facie* evidence, and that the burden is upon the relator to overcome the presumption arising from its issuance, and that the relator, if he can demonstrate by satisfactory evidence that he was not physically present in the demanding state, is entitled to be relieved from the force of the warrant.

### The Evidence Adduced.

In further support of the governor's warrant, Josephine Gallagher was sworn and examined as a witness. She testified to the circumstances of the alleged burglary and identified the relator as having been on the porch of Laroche on the evening of the 23rd of November, 1905, at about 6:30 o'clock; that she saw him through the window and held a short conversation with him; that there was an electric light on the street. In her description of the man she saw, she states that he was inclined to be dark and rather rough looking (relator is light); that about the same time on the evening following, she saw the same man again on the porch. She then testified that she had an interview on the 24th and not on the 23rd. She states that she had not seen the man since coming from New York, at the time she testified, but later changed her testimony and said that she had seen him in the court room that morning. The burglary occurred at 7:30. On cross-examination she stated that she saw relator through the lace curtain, and through the windows. This seems to be the testimony on which the indictment was procured against relator in New York.

Opposed to this testimony was the evidence of several witnesses. Dr. H. S. Warren was called, and testified that he was family physician of the relator and had treated both relator and members of his family. That on three or four occasions about November 24th, and on that date he had dressed relator's hand for a wound in the center of the hand. At

the time of the hearing, December 23rd, relator exhibited a partially healed wound. The doctor's time book showed a call on November 24th. The weight of the evidence is considerably lessened by the careless manner in which the book appears to have been kept and posted. There is nothing, however, to indicate any lack of reputability of the physician, or that he had any motive in swearing falsely concerning the entries in his book.

A witness, John J. McLaughlin, residing at 1551 Monroe street, was introduced on behalf of relator and testified that he had since about the first of last October been engaged as a repairer and painter of lamp posts under a contract with the city of Chicago; that relator was in his employ and received a salary of twenty-five dollars ($25) a week as an inspector, principally, to follow up the work of the men and report on the same. That on Saturday, the 25th of November, at Graham's bank, at 134 Madison street, he paid relator his weekly wages of $25. He recalls that he saw him also on the day previous. In connection with his testimony McLaughlin produced his book of entries concerning the painting contract. This book has every evidence of being a genuine book and kept from week to week, and shows that relator by the name of William Bowers, received his weekly salary for the entire period including the payment on November 25th. His time books and pay rolls of the work of the men employed tally with the book, apparently, in every particular, and if his testimony be taken as true, and that about Saturday noon, of the 25th day of November, he made the payment, it is impossible that relator could have been in the city of New York on Friday evening at 6:30 or 7:30 o'clock. Of McLaughlin it may also be said that there is nothing in his testimony or in the circumstances surrounding him to cast suspicion or doubt upon him or his story. He appears to have held political position prior to engaging upon this contract, but nothing has been offered in any way to impeach him.

Another witness, William Skidmore, engaged in the restaurant and saloon business on West Madison street, testifies that on the 24th day of November, 1905, he loaned to relator

the sum of $15, that one Patrick J. King was in his place and that at his request, he, Skidmore, loaned Bowers $15, and King $10. It was the custom of Skidmore, in making small loans or disbursements of this kind, to make a pencil memorandum on a slip and later to transfer the same to the small account book, and in the evening, on the closing of his place and checking up cash with the cash register, to use another book showing the cash register footings and footings from these slips, for the purpose of making up the cash of the day. There appears upon the memorandum of petty cash, a loan, "Butch, W. R. Skid. $15.00." Before the word "Butch" appears a check mark which it was usual to make on checking the cash up with the cash register. The footings of the day appear on the book used for that purpose in regular order, among other entries, without alterations, and correspond with the entries in the petty cash. As the word "Butch" is written in the check column to the left, the check mark before the name is a strong circumstance, taken in connection with the other check marks which appear in the center of that column, corroborating the contention of realtor that the word was written in on the 24th day of November. The testimony of Skidmore, in connection with his books and entries, is strongly in favor of the conclusion that the transaction occurred as related. Skidmore is corroborated as to the circumstance by Mr. King.

It further appears by the testimony of witnesses, and the station sheets of the Des Plaines street station that Bowers was charged with an assault, and that a warrant was pending for him and on Monday the 27th day of November, he appeared and gave bail and afterwards on hearing was discharged. There was some other testimony of a non-conclusive kind, which we do not deem important.

After considering all the evidence and examining at great length the witnesses and recalling them for further examination, placing in the scales on the one hand the testimony of Miss Gallagher, which seems of a doubtful kind against the testimony corroborated by books, and especially the books and papers of McLaughlin, we feel compelled to hold that the

relator has clearly established by evidence beyond a reasonable doubt, that he was not in the state of New York at the time of the commission of the burglary, and that he was not and is not a fugitive from justice on such charge, from the state of New York. Holding as we do, it follows that the relator is entitled to his discharge, and that will be the order. Relator discharged.