Bobby Gene WARD, Plaintiff,

v.

**KENTUCKY STATE UNIVERSITY BOARD OF REGENTS, Defendants.**

No. 416.

United States District Court,
E. D. Kentucky,
Frankfort Division.

July 20, 1973.

Stuart Lyon and David Kaplan, Louisville, Ky., for plaintiff.

Ed. W. Hancock, Atty. Gen., Frankfort, Ky., for defendants.

MEMORANDUM

SWINFORD, District Judge.

This action was commenced as a result of the nonrenewal of plaintiff's teaching contract at Kentucky State University. Ward claims that defendants' conduct violated 42 U.S.C. §§ 1983 and 2000e–2 in that the nonrenewal was racially motivated and in derogation of the guarantees of free speech and due process. The defendants have filed a motion to dismiss,

arguing: (1) The University was not acting "under color of law" as contemplated by 42 U.S.C. § 1983 because the alleged deprivations are prohibited by state law; (2) The plaintiff is a nontenured instructor and is consequently not entitled to notice and hearing; (3) This case is one in which the federal judiciary should abstain from exercising jurisdiction because the Kentucky courts are suitably equipped to adjudicate plaintiff's claim.

■ A motion to dismiss for failure to state an actionable claim must be viewed in a light most favorable to plaintiff and should not be sustained unless

"it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Hilliard v. Williams, 6th Cir., 465 F.2d 1212 (1972). Defendants' arguments were not addressed to plaintiff's allegation that his termination was racially motivated. While this oversight is alone sufficient to overrule the motion, several other misconceptions should be noted.

■ Defendants' first argument reveals a misunderstanding of the "color of law" concept and is clearly without merit. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), held that proscribed conduct need not be mandated by statute to be actionable under the Civil Rights Act:

"There can be no doubt . . . that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." Id. at 171–172, 81 S.Ct. at 476.

Section 1983 focuses not only upon deprivations commanded by statute—its scope includes conduct permitted solely by virtue of official position.

The University contends that the absence of a formal contract or tenure right relieves it of the responsibility of according plaintiff notice and hearing in connection with his removal. The recent Supreme Court decisions of Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), directly contradict this argument. In Roth, the plaintiff claimed that the nonrenewal of an annual teaching contract abridged his rights of free speech and due process; the district court held as a matter of law that a nontenured professor is entitled to notice and hearing before discharge. Reversing, the Supreme Court ruled that there was no due process violation because the defendant's actions did not debase plaintiff's reputation in the community or deprive him of an opportunity to seek other employment. The Due Process Clause requires a hearing only where there has occurred a deprivation of "liberty" or "property;" a yearly employment contract does not ascend to this level of protection. 408 U.S. at 569, 92 S.Ct. 2701.

■ The principles enunciated in Roth were further defined in Perry v. Sindermann, supra. The plaintiff in Perry, like Ward, claimed that an "implied contract" adequately substituted for a formal tenurial right with the university. The Court recognized that while an action could not be founded upon a mere "expectancy" of re-employment, the absence of a formal agreement would not operate to deprive plaintiff of Due Process applicability where an equally evident implied contract exists:

"A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient 'cause' is shown. Yet absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a 'property' interest in re-employment. For example, the law of contracts in

most, if not all, jurisdictions long has employed a process by which agreements, though not formalized in writing, may be 'implied'." Id. at 601–602, 92 S.Ct. at 2699.

Admittedly, the existence of an implied agreement was more evident in Perry than in the case at bar. The university sued in that case did not employ a tenure system, but stated in its brochure that teachers could expect re-employment if their performance was satisfactory; further, Perry had been employed in the system for ten years prior to his dismissal. However, Ward should be given an opportunity to prove the existence of an implied contract.

■ The Roth and Perry cases are also relevant to plaintiff's free speech claim. While the Court in Roth emphasized that its decision had no effect on plaintiff's First Amendment theory, 408 U.S. at 574–575, 92 S.Ct. 2701, this issue was given close attention in Perry v. Sindermann, supra. There, the non-tenured plaintiff claimed that the university's refusal to rehire him was motivated by his exercise of free speech; the district court granted summary judgment for the university. Noting that the lack of a contractual right to re-employment has no effect upon a First Amendment claim, the Court held:

"(E)ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. . . ."

. . . . . .

"Thus, the respondent's lack of a contractual or tenure 'right' to re-employment . . . is immaterial to his free speech claim." Id. 408 U.S. at 597–598, 92 S.Ct. at 2697.

This court will not predicate dismissal of a complaint containing First Amendment elements upon plaintiff's status as a nontenured professor.

■ Defendants' final contention is that this court should abstain from exercising jurisdiction since the Kentucky courts could handle this claim with equal dispatch and fairness. This argument reflects a mistaken view of the abstention concept. The capability of the state courts does not necessarily preempt federal jurisdiction:

"Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, '. . . to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . . .'." Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L. Ed.2d 444 (1967), quoting Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 28 L.Ed. 542 (1884).

The only plausible ground for abstention in this case involves the determination of whether there was an implied contract between Ward and Kentucky State University. Concurring in Roth and Perry, Mr. Chief Justice Burger recognized this problem:

"(T)he relationship between a state institution and one of its teachers is essentially a matter of state concern and state law. The Court holds today only that a state-employed teacher who has a right to re-employment under state law, arising from either an express or implied contract, has, in turn, a right guaranteed by the Fourteenth Amendment to some form of prior administrative or academic hearing on the cause for nonrenewal

of his contract. Thus, whether a particular teacher in a particular context has any right to such administrative hearing hinges on a question of state law. . . ."

"Because the availability of the Fourteenth Amendment right to a prior administrative hearing turns in each case on a question of state law, the issue of abstention will arise in future cases contesting whether a particular teacher is entitled to a hearing prior to nonrenewal of his contract. If relevant state contract law is unclear, a federal court should, in my view, abstain from deciding whether he is constitutionally entitled to a prior hearing, and the teacher should be left to resort to state courts on the questions arising under state law." 408 U.S. at 603–604, 92 S.Ct. at 2717.

This court has not been made aware of any ambiguity in Kentucky law concerning implied contracts and will not decline jurisdiction merely because a question involving state law is presented.

An order will be entered overruling defendants' motion to dismiss.