Irene Mark BEN, on her own behalf, and on behalf of all others similarly situated, Plaintiff,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION et al., Defendants.

Civ. A. No. C-4969.

United States District Court, D. Colorado.

April 4, 1974.

1200

Taussig & Cobb, Boulder, Colo., Richard W. Hughes, Shiprock, N. M., for plaintiffs.

Davis, Graham & Stubbs, Denver, Colo., for defendants.

## OPINION AND ORDER

CHILSON, District Judge.

This matter is before the Court on defendants' motion to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

The amended complaint states four claims, the first two based on the Truth in Lending Act and the last two seek relief for alleged violations of the Civil Rights Act, 42 U.S.C. §§ 1982 and 1985.

The essence of plaintiff's amended complaint is that she is a Navajo Indian; that on April 20, 1970, she purchased a 1970 Chevrolet automobile from a General Motors dealer and the dealer with her consent financed the purchase through the defendant, General Motors Acceptance Corporation (GMAC); that physical damage insurance was required; that defendants Motors Insurance Corporation (MIC) and Cim Insurance Corporation (CIM) are wholly-owned subsidiaries of GMAC primarily engaged in writing physical damage insurance on sales of vehicles financed by GMAC; that in this transaction they, together with GMAC, acted in concert and caused the insurance to be written

in CIM which is generally considered as "high risk" insurance with rates higher than those charged by MIC; that the "high risk" insurance was written without justification in fact and was so written because of a policy of the defendants "whereby Navajo Indians are normally insured under CIM, at high risk rates, regardless of their background, driving records, and other factors.", and at higher rates than those charged Anglos; that the insurance policy was renewed in April 1971 and again in 1972 at high risk rates; that such conduct was racial discrimination; that in the renewal of the policy in April 1972, the plaintiff was charged the premium for renewal and in addition thereto, the sum of $.82 for credit life insurance and a finance charge of $11.35; that this constituted a credit transaction which required disclosure under the Truth in Lending Act; that disclosure was not made and defendants are liable under 15 U.S.C. § 1640(a).

By the first claim, plaintiff seeks to recover damages for the alleged violations of the Truth in Lending Act; by the second claim, plaintiff seeks to maintain a class action on behalf of others similarly situated to recover damages for the class for the alleged violations of the Truth in Lending Act; by the third claim, the plaintiff seeks to maintain a class action to recover for herself and others similarly situated for racial discrimination pursuant to 42 U.S.C. § 1982, and by the fourth claim for relief, the plaintiff seeks to maintain a class action for herself and other members of the class for an alleged conspiracy of racial discrimination in violation of 42 U.S.C. § 1985(3).

The Court has not determined and does not now have before it the question of whether or not the plaintiff may maintain any class action. The sole matter before the Court at the present time is whether or not the plaintiff herself has stated any claims for relief which will withstand the attack made by the defendants' motions to dismiss.

Briefs in support of and in opposition to the motions to dismiss have been filed and considered by the Court and the Court has heard oral argument.

The defendants contend that the first two claims for relief based upon the Truth-in-Lending Act should be dismissed for two reasons:

First, the action is barred by the McCarran Act, (15 U.S.C. § 1011 et seq.); and

Second, her action is barred by the one-year limitation of the Truth-in-Lending Act, (15 U.S.C. § 1640(e)).

Sections 1011 and 1012 of the McCarran Act provide:

Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance.

 Since the State of Colorado has occupied the field of regulating the activities of insurance companies, in a comprehensive manner, (1963 C.R.S. 72–12–1 et seq.; 1963 C.R.S. as amended, 73–4–101 et seq. and 73–35–1 et seq.,) the Court is of the opinion that the first and second statements of claim based on the Truth-in-Lending Act do not state a claim upon which relief can be granted. The Court agrees with Gerlach v. Allstate Insurance Company, D.C., 338 F. Supp. 642 at 649–651, which holds that the Truth-in-Lending Act does not specifically relate to the business of insurance and therefore does not apply to the business of insurance when the state has exercised its rights to regulate and control the insurance business.

 Additionally, the Court is satisfied from the facts set forth in the amended complaint, that even though the action was not barred by the McCarran

Act, it is barred by the one-year limitation of the Truth-in-Lending Act. The violation, if any, occurred when the insurance was renewed on April 21, 1972, and this action was not instituted until April 30, 1973.

The first and second claims for relief should be dismissed for the reasons above set forth.

As to the third and fourth statements of claim, based on the Civil Rights Act, (42 U.S.C. §§ 1982 and 1985) the defendants contend first, that the McCarran Act prohibits the bringing of those actions in federal court, and secondly, that since the Civil Rights Act does not provide for limitation of actions, the two-year statute of limitations of the State of Colorado 1963 C.R.S. 87-1-7 is applicable. Defendants reason that the violation of the Civil Rights Act occurred when the car was purchased in April 1970, and therefore the claim is barred by the two-year statute.

■ This contention is without merit. The discrimination alleged is the writing of the physical damage insurance at "high risk" rates and therefore it was a continuing violation when the policy was renewed in 1971 and again in 1972. See Baldwin v. Loew's Incorporated, 312 F.2d 387 (7th Cir. 1963). This action was brought within two years after the 1972 renewal and is not barred by the two-year limitation.

■ The Court is also of the opinion that the McCarran Act does not bar plaintiff's third and fourth claims for the reasons which follow.

A brief review of the background and history of the McCarran Act and the Civil Rights Act will demonstrate that the Congress, in enacting the McCarran Act had no intent to deny access to the Federal Courts for redress for violations of a person's civil rights guaranteed by the Federal Constitution.

The Supreme Court in 1868, in Paul v. Virginia, 8 Wall. 168, 75 U.S. 168, 19 L.Ed. 357 held that the issuance of a policy of insurance even though the parties thereto were domiciled in different states, was not interstate commerce. Thereafter, it was generally assumed that the Sherman Act and other Federal Anti-Trust laws were not applicable to the insurance business. That assumption proved to be erroneous when the Supreme Court in United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 held that a fire insurance company which conducted a substantial part of its business across state lines was engaged in interstate commerce and subject to the Sherman Act. Congress reacted with a prompt enactment of the McCarran Act, the effect of which was to permit continued regulation by the several states of the business of insurance to the end that such business was exempt from the federal anti-trust laws to the extent that such business was regulated by state law. See Commander Leasing Co. v. Transamerica Title Insurance Co., 477 F.2d 77 at 82 (10th Cir. 1973).

The Civil Rights Act had an entirely different background and history which has been set forth in numerous Supreme Court decisions and many articles. We quote from Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) because it summarizes the history and background of the Civil Rights Acts. It states in pertinent parts:

"During most of the Nation's first century, Congress relied on the state courts to vindicate essential rights arising under the Constitution and federal laws. The only exception was the 25th section of the Judiciary Act of 1789, 1 Stat. 85, providing for review in this Court when a claim of federal right was denied by a state court. But that policy was completely altered after the Civil War when nationalism dominated political thought and brought with it congressional investiture of the federal judiciary with enormously increased powers. The Act of March 3, 1875, was the principal '. . . measure of the broadening federal domain in the area of

individual rights,' McNeese v. Board of Education, 373 U.S. 668, 673 [83 S.Ct. 1433, 10 L.Ed.2d 622]. By that statute ' . . . Congress gave the federal courts the vast range of power which had lain dormant in the Constitution since 1789. These courts ceased to be restricted tribunals of fair dealing between citizens of different states and became the *primary* and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States.' (Emphasis added.) Frankfurter & Landis, The Business of the Supreme Court: A Study in the Federal Judicial System 65. Indeed, even before the 1875 Act, Congress, in the Civil Rights Act of 1871, subjected to suit, '[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights . . . secured by the Constitution and laws . . .,' 42 U.S. C. § 1983; and gave the district courts 'original jurisdiction' of actions '[t]o redress the deprivation, under color of any State law . . . of any right . . . secured by the Constitution . . .' 28 U.S.C. § 1343(3).

"In thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, ' . . . to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . . .' Robb v. Connolly, 111 U.S. 624, 637 [4 S.Ct. 544, 551, 28 L.Ed. 542]. 'We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and

that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum.' Stapleton v. Mitchell, D.C., 60 F.Supp. 51, 55; see McNeese v. Board of Education, 373 U.S. at 674 [83 S.Ct. at 1437], n. 6. Cf. Cohens v. Virginia, 6 Wheat. 264, 404 [5 L.Ed. 257]." (Footnotes omitted.)

To put it another way, the Civil Rights Act is the means by which a person deprived of his civil rights under the Federal Constitution may obtain relief either by way of damages or injunction.

There is no indication in the background and history of the McCarran Act or its application that the McCarran Act was intended to deprive a citizen of access to the Federal Courts to obtain redress for violations of his civil rights and require him to resort to the state courts as the sole forum for redress. If such were the intent of Congress, it is highly questionable that Congress had the power under the Constitution to do so.

It may well be that the plaintiff in this case does have access to the state courts for redress of the alleged racial discrimination but it certainly does not deprive her of access to the Federal Courts for the same purpose.

The defendants' motion to dismiss the third and fourth statements of claim should be denied.

The question of whether or not the plaintiff may maintain these claims as class actions is not before the Court and will later be determined when plaintiff files a motion for a determination of this question.

It is therefore ordered that the defendants' motions to dismiss the first and second claims of the complaint are hereby granted; that the motions to dismiss the third and fourth statements of claim are hereby denied and the defendant shall answer the third and fourth statements of claim of the plaintiff within fifteen days from this date.