**Doreen M. COCHRAN**

v.

**PACO, INC.**

**No. C75–1356A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 22, 1975.

On Motion to Alter or Amend
March 16, 1976.

Joseph H. King, Jr., Atlanta, Ga., for plaintiff.

Randall L. Hughes and Robert L. Connelly, Jr., Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendant.

ORDER

EDENFIELD, Chief Judge.

This is an action brought pursuant to the Truth in Lending Act, 15 U.S.C. § 1640(e), which was referenced to a bankruptcy judge designated as a special master, under the provisions of Local Rule 250, to determine the issues and to make a written report of findings of fact and conclusions of law with a recommendation to this court for final action. This court has received the special master's report and is constrained to REJECT the recommendations therein.

The plaintiff has charged the defendant with violating various disclosure provisions of the Act. The defendant, an insurance premium finance company licensed under Georgia Code Ann. § 84–5304, moved for summary judgment before the special master on the grounds that Section 2(b) of the McCarran-Fer-

guson Act, 15 U.S.C. § 1012(b),[1] precludes application of the Truth in Lending Act to defendant. The special master found that the finance agreement between the parties was outside the "business of insurance" within the meaning of the McCarran Act, and that such Act was therefore inapplicable. The special master recommended denial of defendant's motion; this court does not agree.

■ The purpose of the McCarran Act and the reasons for its enactment are fully reviewed by the Supreme Court in *SEC v. National Securities, Inc.,* 393 U.S. 453, 457–61, 89 S.Ct. 564, 566, 21 L.Ed.2d 668, 671 (1969). It need only be emphasized here that the main purpose of the Act was "to assure that the activities of insurance companies in dealing with their policyholders would remain subject to state regulation." *Id.* at 459, 89 S.Ct. at 568, 21 L.Ed.2d at 676. More specifically the Court noted that "the relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement . . . [are] the core of the 'business of insurance.' Undoubtedly other activities of insurance companies relate so closely to their status as reliable insurers that they to must be placed in the same class." *Id.* at 460, 89 S.Ct. at 568, 21 L.Ed.2d at 676. The special master reasoned that since the insurance company was not a party to the agreement at issue, the transaction was not within the scope of the Act. The master distinguished this case from *Gerlach v. Allstate Insurance Co.,* 338 F.Supp. 642 (S.D.Fla.1972), on the grounds that *Gerlach* dealt with a transaction between the insurer and the insured.

In *Gerlach,* the court found that an insurer's installment contract for the payment of premiums was not a credit transaction within the meaning of the Truth in Lending Act and that, in any event, the McCarran Act precluded application of the Truth in Lending laws to the insurance contract. The court reasoned that (1) the Truth in Lending Act was not an act which "specifically relates to the business of insurance" within the meaning of 15 U.S.C. § 1012(b) and that (2) the very presence of a Florida statute dealing with disclosure of costs in an insurance contract was all that was needed to foreclose application of the federal disclosure laws, 338 F.Supp. at 649–650.[2]

■ The plaintiff is correct in her assertion that *Gerlach* is not dispositive under the facts here. This case involves the somewhat more subtle question of where the "business of insurance" ends and the business of consumer financing begins. The defendant performs the same role in the insurance business as do other financing companies in the consumer sales business. The defendant pays the insurer the premiums, and the insured pays the defendant installment payments over a certain period of time. If the debtor defaults in a normal credit transaction, the creditor generally accelerates the debt and forecloses on the security if the debtor is unable to pay the balance due. The security, of course, often includes the items actually purchased in the financed transaction. In a similar way, the insurance premium finance company has the power to "repossess the goods" when the insured fails to pay installments; the company is entitled to include a power of attorney clause in the finance agreement enabling the company to cancel the insurance when installments are not paid, § 84–5312. If such

---

1. 15 U.S.C. § 1012 reads: "(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

 "(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless

such Act specifically relates to the business of insurance: *Provided,* that after June 30, 1948 [the federal antitrust laws] shall be applicable to the business of insurance to the extent that such business is not regulated by State law."

2. *See also Ben v. GMAC,* 374 F.Supp. 1199, 1201 (D.Colo.1974), in which the McCarran-Ferguson Act was held to preclude application of the Truth in Lending Act to a contract between the insurance company and the insured.

cancelation does occur, the finance company must comply with the strict notice and rebate requirements of §§ 84–5312 and 84–5313, because the finance company is legally presumed to be cancelling on behalf of the insured vis-a-vis the insurance company.

Notwithstanding their demonstrated similarity to other finance companies subject to the Truth in Lending Act, premium finance companies play an integral part in the insurance transaction and the State of Georgia has therefore required licensing of such companies by the Commissioner of Insurance in a manner similar to the licensing of insurance companies, *compare* Ga.Code Ann. §§ 84–5304–6 with §§ 56–312–7. In addition, the Commissioner is empowered to promulgate, and has promulgated, regulations for the premium financing industry, § 84–5308.

■ Thus, although the premium finance company performs much the same role as other finance companies, this role has been recognized by the state as forming an integral part of the insurer-insured relationship. The finance company is legally empowered to act as an agent for the insured, and to terminate a policy, much like an insurance company, if premium installments are not paid. If the state were free to regulate the terms of insurance contracts between the company and the insured, but not free to regulate the finance companies, the entire state regulatory structure could be frustrated. Georgia has recognized this and has therefore extended the Commissioner's control to such companies. Thus, it would appear that the McCarran Act requires that such control be free from federal regulatory interference.

■ The plaintiff argues, however, that even if premium finance agreements are part of the insurance business, the Truth in Lending Act does not in any way "invalidate, impair, or supersede" state law relating to such agreements. When the first part of § 1012(b) of the McCarran Act is read together with the proviso contained in that section, it is clear that the state need only

promulgate regulations in the particular area of the insurance business at issue in order to preclude application of federal law. *See Monarch Life Insurance Co. v. Loyal Protective Life Insurance Co.*, 326 F.2d 841 (2d Cir. 1963), *cert. den.*, 376 U.S. 952, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964); *Gerlach, supra,* at 650; *cf. FTC v. National Casualty Co.*, 357 U.S. 560, 563, 78 S.Ct. 1260, 1262, 2 L.Ed.2d 1540, 1542 (1958). Georgia law clearly sets out in detail what the finance agreement must contain, including the total amount of premiums, the down payment, principal balance, service charge, and the like, Ga.Code Ann. § 84–5310. In any event, it is clear that the Truth in Lending Act would indeed "supersede" state law if it were applied in this area. That federal law requires disclosures substantially different from those required under state law is evident from a comparison of 15 U.S.C. § 1638 and 12 C.F.R. § 226.8 with Ga.Code Ann. § 84–5309. Moreover, 15 U.S.C. § 1610(a), which allows for compliance with state disclosure laws, does not erase these differences; that section requires the creditor to comply with state law *in addition to* complying with federal disclosure requirements, when such state law is not inconsistent with the federal requirements. *See also* 12 C.F.R. § 226.6(c).

In summary, the Truth in Lending Act may not be applied to premium financing agreements because (1) the Act does not specifically relate to the business of insurance and (2) the Act supersedes a valid state law regulating that business. The defendant's motion for summary judgment is therefore GRANTED.

## ON MOTION TO ALTER OR AMEND DECISION

The plaintiff has moved to alter or amend this court's decision of December 22, 1975 which held that the Truth in Lending Act could not be applied to the activities of premium financing companies in Georgia. The plaintiff essentially asks this court to reconsider the three essential issues in this case: (1) whether a premium finance company is in the

"business of insurance" within the meaning of the McCarran-Ferguson Act, (2) whether the Truth in Lending Act supersedes the Georgia statutes regulating premium financing companies, and (3) whether the Truth in Lending Act is a statute which "specifically relates to the business of insurance."

■ (1) As in her previous brief, the plaintiff places too much emphasis on the Supreme Court's statement in *SEC v. National Securities, Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 569, 21 L.Ed.2d 668, 676 (1969), that the McCarran-Ferguson Act was meant to apply only to the "relationship between the insurance *company* and the *policyholder*." (Emphasis added.) The Court was merely rejecting the contention that all the activities of an insurance company were exempt from federal regulation under the Act. The Act itself refers only to the "business of insurance" and the Court had no occasion in the *National Securities* case to address the question of whether companies which were not insurance companies per se could nonetheless be protected by the Act.

The plaintiff nevertheless seeks to convince the court that a premium financing company cannot be considered a part of the business of insurance because such a company has no control over the terms of an insurance policy, its reliability, or its cost. Rather, plaintiff argues, the company is merely a creditor, indistinguishable from other creditors, except for the fact that it has a power of attorney by which it may cancel the insured's policy.

Plaintiff's argument ignores the realities of the insurance business. Premium finance companies have experienced rapid growth in recent years because of the unwillingness of many insurance companies to sell certain forms of insurance through installment plans. The financing companies fill the gap by paying the insurance company the premiums in full and collecting the premium in installments from the insured.[1] If the insured fails to pay the installments to the financing company, the result is the same as if he defaulted on payments to the insurer: the policy is canceled. Thus, although the finance company's activities have little effect on the insurance company's ability to pay on claims, they have considerable impact on the cost of the insurance, the terms of the policy, and the likelihood of the insured's recovery in accordance with the terms of the policy. This likelihood of recovery may be jeopardized not only by financing disagreements between the financing company and the insured, but also by a possible failure on the part of the financing company to make the required payment to the insurance company. Thus it is clear that the financing company is indeed a part of the business of insurance.

(2) The plaintiff also asks the court to reconsider its finding that the Truth in Lending Act supersedes Georgia law, in light of two district court opinions, *Cody v. Community Loan Corp.*, No. 1863 (S.D. Ga.1973), and *Jenkins v. Triangle Volkswagen*, No. C74–199–D (M.D.N.C.1975). In *Cody*, the court held that the Truth in Lending Act could apply to the installment sale of insurance policies since that Act did not interfere with any Georgia statute pertaining to disclosures accompanying the sale of insurance. The court specifically noted that Ga.Code Ann. § 84–5309, the state provision at issue here, did not apply to actual insurance companies. Although that court nonetheless went on to hold that, in any event, 15 U.S.C. § 1610(c) of the Truth in Lending Act would eliminate any statutory conflicts, the outcome of that case is clearly distinguishable on its facts. This court respectfully declines to follow any dictum contained in that opinion which is contrary to this court's previous opinion.

In *Jenkins*, the court issued a short memorandum opinion, in which it ap-

---

1. See D. Krischer, " 'Truth' in Insurance Premium Financing," 30 Business Lawyer 969 (1975). It should be noted that the author of the above article holds the view that insurance premium financing agreements are not exempted from the Truth in Lending Act by reason of the McCarran-Ferguson Act, *Id.* at 974–6.

pears to have accepted the plaintiff's contention that the North Carolina statutes at issue specifically provided that the federal truth-in-lending law would control in the event of conflict between the statutes. No such provision is involved here. In this case there is a Georgia statute regulating the amount of disclosure required in a premium financing transaction. That statute is similar, but by no means identical to the Truth in Lending Act.[2] Moreover, the statute here does not reflect the relatively intricate requirements contained in Regulation Z, promulgated pursuant to the Truth in Lending Act, and the Georgia Commissioner of Insurance has not chosen to promulgate regulations duplicating these requirements. Thus, if the Truth in Lending Act were held to apply to a premium finance company, any such company which complied in good faith with the Georgia statute would quite possibly find itself in violation of the Truth in Lending Act.

 (3) Finally, the plaintiff cites the *Jenkins* decision for the proposition that the Truth in Lending Act is an Act which "specifically relates to the business of insurance" within the meaning of the McCarran-Ferguson Act. But *Jenkins* was decided in a completely different factual context. In that case, the plaintiff complained of a disclosure violation relating to credit insurance, which was issued as part of a regular credit transaction. The violation involved a failure on the part of the creditor to adequately disclose the amount of the insurance premiums, and a failure to include such a sum in the finance charge. There is no doubt that the Truth in Lending Act does specifically relate to insurance which is ancillary to the actual credit sale and which is issued for the purpose of insuring repayment of the balance owed, *see* 15 U.S.C. § 1605. But this case involves the actual credit sale of insurance, and there is no specific reference to such a sale in the Act. Rather, the Act, by its terms, applies to *all* credit transactions except those specifically exempted in 15 U.S.C. § 1603. Thus, the Act is clearly one of general applicability.

The plaintiff argues, however, that because the Truth in Lending Act does not exempt insurance transactions, that Act is therefore specifically related to insurance. This interesting interpretation of the McCarran-Ferguson Act is clearly erroneous since it would render that Act a complete nullity. The purpose of the McCarran-Ferguson Act was to exempt the insurance business from federal regulations of general application. If every federal law which did not *exclude* insurance from its coverage were "specifically related to insurance," then there would be no possible situation in which the McCarran-Ferguson Act could be applied.

**2.** Georgia Code Ann. § 84–5309 states: "A premium finance agreement shall—

"(a) Be dated, signed by or on behalf of the insured, and the printed portion thereof shall be in at least eight-point type;

"(b) Contain the name and place of business of the insurance agent or insurance broker negotiating the related insurance contract, the name and residence or place of business of the insured as specified by him, the name and place of business of the premium finance company to which payments are to be made, a description of the insurance contracts involved and the amount of the premium therefor; and

"(c) Set forth the following items, where applicable:

(1) The total amount of the premiums;

(2) The amount of the down payment;

(3) The principal balance (the difference between items (1) and (2));

(4) The amount of the service charge, including the additional charge of up to $12;

(5) The balance payable by the insured (sum of items (3) and (4));

(6) The number of payments required, the amount of each payment expressed in dollars, and the due date or period thereof.

"The items set out in subsection (c) of this section need not be stated in the sequence or order in which they appear in such clause, and additional items may be included to explain the computations made in determining the amount to be paid by the insured.

"The licensee or the insurance agent or insurance broker shall deliver to the insured, or mail to him at his address shown in the agreement, a complete copy of the agreement."

This court therefore reaffirms its finding that the transaction at issue was part of the business of insurance, that the Truth in Lending Act supersedes Georgia law, and that the Truth in Lending Act does not specifically relate to the business of insurance. Plaintiff's motion is therefore DENIED.